E-filing

SHANA SCARLETT (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

STUART M. PAYNTER (226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@smplegal.com

Attorneys for Plaintiffs

[Additional counsel listed on signature page]

ORIGINAL FILED
JUN - 5 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEOFFREY PECOVER and JEFFREY LAWRENCE, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

ELECTRONIC ARTS INC., a Delaware Corporation,

Defendant.

No. C08-02820

CLASS ACTION

CLASS ACTION COMPLAINT

**JURY TRIAL DEMANDED**

000700-00 243373 V1

Plaintiffs, by and through their attorneys, based on their individual experiences, the investigation of counsel, and information and belief allege as follows:

## INTRODUCTION

1. This suit arises out of the blatantly anticompetitive conduct of Electronic Arts Inc., a multi-billion dollar interactive entertainment software company that produces numerous interactive football software products including the Madden NFL, NCAA Football and Arena Football titles. Through an unlawful and anticompetitive series of exclusive agreements with the National Football League, the NFL Players Union, Arena Football League and the National Collegiate Athletic Association ("NCAA"), Electronic Arts has driven its competition out of the market for interactive football software, including most significantly Take Two Interactive Software, Inc., the maker of the interactive football software title NFL 2K5 and has prevented additional competitors from entering the market. As a direct result of this anticompetitive conduct, the price of interactive football software has soared: Prior to signing the exclusive agreements referred to above, Electronic Arts charged $29.95 for its flagship product Madden NFL. Immediately after the exclusive agreements entered into effect – and the effective withdrawal of its only competitor from the market – Electronic Arts increased its price for that software nearly *seventy percent* to $49.99.

## PARTIES

2. Plaintiff Geoffrey Pecover is a resident of Washington, D.C. Mr. Pecover purchased a copy of Madden 2008 from a Best Buy store located in the District of Columbia in August of 2007.

3. Plaintiff Jeffrey Lawrence is a resident of California. Mr. Lawrence purchased and/or licensed a copy of Madden NFL 2007 from a Gamestop store located in California in 2007.

4. Defendant Electronic Arts Inc., a Delaware corporation, is a multi-billion dollar interactive entertainment software company that produces the Madden NFL videogame. Its principal place of business is Redwood City, California.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337 (commerce and antitrust regulation), as this action arises under Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

CLASS ACTION COMPLAINT - 1 -

000700-00 243373 V1

The Court has supplemental subject matter jurisdiction of the pendant state law claims under 28 U.S.C. § 1367. The Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who are citizens of a different state than the Defendant.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) and Sections 4 and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, because Defendant resides, transacts business or is found within this District, and a substantial part of the events giving rise to the claims arose in this District.

7. Intradistrict Assignment: Assignment to the San Francisco or Oakland division of this Court is appropriate because Defendant's headquarters and principal place of business is in Redwood City, California. Because this action arises in the county of San Mateo, pursuant to Northern District of California, Local Rule 3-2(d), assignment to either the San Francisco Division or the Oakland Division is proper.

## RELEVANT MARKET

8. Interactive football software is a distinct market. The geographic market is the entire United States. Electronic Arts has the ability to raise the price of its interactive football software substantially for a significant period of time without consumers substituting another product. As a result of its anticompetitive conduct detailed below, Electronic Arts now has a monopoly on the market for interactive football software.

## ANTICOMPETITIVE CONDUCT

9. In 1989, Electronic Arts released the first version of the Madden NFL football game. The game soon dominated the market and survived in this dominant position despite challenges over the intervening years by smaller companies such as Midway and 989 Sports and even well funded companies such as Microsoft.

10. In 2004, Sega partnered with Take Two Interactive, Inc. one of the largest makers of interactive software in the world to update and distribute its existing interactive football software. The result, NFL 2K5, was released to rave reviews. The Official Xbox Magazine gave it its Editors' Choice award and deemed it "the best NFL title on the Xbox." GamePro.com and IGN.com, both

highly influential websites covering the football interactive software market, similarly gave NFL 2K5 Editors' Choice awards. The reviewer at IGN called NFL 2K5 "one of the finest sports experiences I've had the pleasure of enjoying."

11. NFL 2K5 combined award-winning gameplay with ground breaking prices. Despite NFL 2K5's superior quality, Take Two priced the game nearly thirty dollars below the Madden NFL title. Faced with a serious competitor for the first time, Electronic Arts was forced to lower its prices. Three months after the entry of NFL 2K5 into the market, in November 2004, Electronic Arts lowered the price of Madden NFL from $49.95 to $29.95.

12. This vigorous competition benefited consumers. Electronic Arts could have continued to compete by offering a lower price and/or a higher quality product. Instead, Electronic Arts quickly entered into a series of exclusive agreements with the only viable sports football associations and leagues in the United States: the National Football League ("NFL"), the Arena Football League ("AFL") and NCAA Football.

13. By far the most important football league from the perspective of interactive football software makers is the NFL. The NFL's fan base as well as its team and player recognition are unrivaled by any other professional football league or amateur athletic league. In December 2004, Electronic Arts signed an exclusive agreement with the NFL and the NFL Players Union that prevented any other company from producing NFL branded interactive football software.

14. Shortly thereafter, on or about January 10, 2005, Electronic Arts announced an exclusive agreement with the AFL, a competitor to the NFL, making it the exclusive provider of AFL branded interactive football software. Approximately three months later, in April 2005, Electronic Arts signed an agreement with the NCAA through its licensing arm College Licensing Company, Inc. to become the exclusive provider of NCAA Football branded interactive football software.

15. As Electronic Arts well knew, consumers demand that the teams and players in interactive football software be identified with actual teams and players. This is only achievable through a license with a sports league and associated players associations. There is essentially no demand and therefore no market for interactive football software that is not based on real life teams

and/or players. Electronic Arts recognizes this fact in its annual report to investors where it notes that if it were "unable to maintain" licenses with "major sports leagues and players associations" its "revenue and profitability will decline significantly."

16. By signing the exclusive agreement with the NFL, Electronic Arts immediately killed off Take Two's NFL 2K5 software, the only competing interactive football product of comparable quality to its Madden NFL franchise. Through its agreements with the NCAA and AFL, Electronic Arts prevented Take Two and others from re-entering the market with non-NFL branded interactive football software. Once again without a competitor, Electronic Arts raised its prices dramatically. Specifically, Electronic Arts raised the price of the Madden 2006 videogame (released in August of 2005) nearly seventy percent to $49.95. Electronic Arts currently sells interactive football software for up to $59.95.

17. Since signing the series of exclusive and anticompetitive agreements outlined above, Electronic Arts continues to solidify its stranglehold on the market for interactive football software. On February 12, 2008, Electronic Arts extended its anticompetitive agreements with the NFL and the NFL Players Union until 2012. Less than two weeks later, Electronic Arts announced a $2 billion offer for Take Two Interactive. A successful takeover of Take Two Interactive by Electronic Arts would remove one of the few companies with the ability and expertise to compete in the market for interactive football software in the event that the Electronic Arts exclusive agreements were terminated or voided by a court.

18. As a direct result of the unlawful anticompetitive actions alleged above, Electronic Arts gained a monopoly in the market for interactive football software.

**COMMON COURSE OF CONDUCT EMANATING FROM CALIFORNIA**

19. Upon information and belief, the unlawful course of conduct outlined above was created, adopted, ratified and/or implemented in the corporate headquarters of Electronic Arts located in Redwood City, California. Upon information and belief, the Electronic Arts executives responsible for the series of anticompetitive agreements outlined above are based in California and a substantial part, if not all, the anticompetitive conduct took place in California. Therefore, application of California law to a nationwide class is appropriate.

CLASS ACTION COMPLAINT - 4 -

000700-00 243373 V1

## ANTITRUST INJURY

20. But for Electronic Arts' exclusive agreements with the NFL, the Players Union, the AFL and NCAA, Take Two and its partners could have developed subsequent versions of NFL 2K5 and other competitors could have entered the market for interactive football software. But for Electronic Arts' exclusive agreements with the NFL, the Players Union, AFL and NCAA, the price of interactive football software produced by Electronic Arts would be substantially lower than its current price. Moreover, consumers would have enjoyed additional features and overall higher quality interactive football software.

21. As a direct result of Defendant's anticompetitive actions, competition in the market for interactive football software has been restrained.

## CLASS ACTION ALLEGATIONS

22. Plaintiffs sue on their own behalf and on behalf of a class of persons pursuant to Federal Rule of Civil Procedure 23. The Class consists of all persons in the United States who purchased and/or licensed from Electronic Arts a copy of interactive football software with a release date of August 2005 or later. Excluded from the class are (a) persons purchasing directly from Electronic Arts and (b) Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies.

23. In the event California law is not applied to the claims of all Class members for damages regardless of where they reside, Plaintiffs will seek certification of the following subclass for damages: All persons in an Included State who purchased and/or licensed from Electronic Arts a copy of interactive football software with a release date of August 2005 or later. Excluded from the class are (a) persons purchasing directly from Electronic Arts and (b) Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies. For purposes of the subclass, the "Included States" are the states listed in Paragraphs 50-69 and 73-91 of this Complaint.

24. The persons in the Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Class is easily ascertainable, as each class member can by identified

CLASS ACTION COMPLAINT - 5 -

by using Defendant's records and/or the records of its distributors or retailers. Plaintiffs are informed and believe that there are many thousands of Class members.

25. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

(a) Whether interactive football software constitutes a relevant market;

(b) Whether Defendant has a monopoly on the market for interactive football software;

(c) Whether Defendant gained this monopoly unlawfully;

(d) Whether Defendant's actions in entering the exclusive agreements alleged above violated California law;

(e) Whether consumers and class members have been damaged by Defendant's conduct;

(f) Whether punitive damages are appropriate;

(g) Whether Defendant should disgorge unlawful profits; and

(h) The amount of any damages.

26. Plaintiff's claims are typical of the Class' claim, as they arise out of the same course of conduct and the same legal theories as the rest of the Class, and Plaintiffs challenge the practices and course of conduct engaged in by Defendant with respect to the Class as a whole.

27. Plaintiff will fairly and adequately protect the interests of the class. Plaintiffs have retained class counsel who are able and experienced class action litigators.

28. Resolution of this action on a class-wide basis is superior to other available methods and is a fair and efficient adjudication of the controversy because in the context of this litigation, no individual class member can justify the commitment of the large financial resources to vigorously prosecute a lawsuit against Defendant. Separate actions by individual class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendant and substantially impede or impair the ability of class members to pursue their claims. A class action also makes sense because Defendant has acted and refused to take steps that are, upon information and belief, generally applicable to thousands of individuals, thereby making injunctive relief appropriate with respect to the Class as a whole.

**JURY TRIAL DEMANDED**

29. Plaintiff hereby demands a trial by jury on all issues triable of right by jury.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE SHERMAN ACT**
**(15 U.S.C. § 2)**

30. Each of the foregoing allegations is incorporated in this claim for relief.

31. The relevant product market is the interactive football software market.

32. The relevant geographic market is the entire United States.

33. Electronic Arts possesses monopoly power in the relevant market.

34. Substantial barriers to entry and expansion exist in the relevant market.

35. Electronic Arts has the power to control prices and exclude competition in the relevant market.

36. Since 2004, Defendant has engaged in conduct with anticompetitive effects to: (a) unlawfully maintain and enhance its monopoly in the relevant market and to keep prices high; and (b) stifle competition and eliminate consumer choice through unlawful exclusionary behavior designed to keep Take Two and other competitors and potential competitors weak, undersized and unable to produce a viable substitute for Defendant's interactive football software.

37. Defendant has also combined or conspired with others in furtherance of its efforts to monopolize the relevant market for interactive football software.

38. There is no legitimate business justification for Defendant's conduct.

39. Plaintiffs and the Class members have been injured and will continue to be injured in their businesses and property by payment more for interactive football software purchased indirectly from Electronic Arts than they would have paid or would pay in the future in the absence of Defendant's unlawful acts.

40. Plaintiffs and the Class are entitled to an injunction that terminates the ongoing violations alleged in this Complaint.

CLASS ACTION COMPLAINT - 7 -

000700-00 243373 V1

<021>Case4:08-cv-02820-CW   Document1   Filed06/05/08   Page9 of 13

## SECOND CAUSE OF ACTION

### VIOLATION OF THE CARTWRIGHT ACT
**(California Business & Professions Code §§ 16720, *et seq.*)**

41. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

42. Since 2004 and up to the present time, Defendant conspired, and agreed and continues to combine, conspire and agree to unreasonably restrain and monopolize the market for interactive football software, in violation of California Business and Professions Code sections 16720, *et seq.*, by signing the exclusive agreements as alleged above.

43. As a direct consequence of the agreements, competition in the market for interactive football software has been restrained, suppressed and eliminated. Class members have been deprived of the benefit of a free, competitive marketplace for interactive football software.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION ACT
**(California Business & Professions Code §§ 17200, *et seq.*)**

44. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

45. Defendant has engaged in and is still engaged in acts of unfair competition, as defined in California Business and Professions Code sections 17200, *et seq.*, including but not limited to violation of the Sherman Act, 15 U.S.C. § 2 and the California Business and Professions Code sections 16720, *et seq.*, as alleged above.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

46. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

47. To the detriment of Plaintiff and members of the Class, Defendant has been and continues to be unjustly enriched as a result of the unlawful and/or wrongful conduct. Defendant has unjustly benefited through the sale of interactive football software at an inflated, anticompetitive monopoly price to consumers as well as the sale of advertising in its interactive football software.

CLASS ACTION COMPLAINT - 8 -

000700-00 243373 V1

48.   Between the parties, it would be unjust for Defendant to retain the benefits attained by their actions. Accordingly, Plaintiffs and members of the Class seek full restitution of Defendant's enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## FIFTH CAUSE OF ACTION

### (Violations of State Antitrust and Restraint of Trade Laws)

49.   Each of the foregoing allegations is incorporated in this claim for relief and this claim is alleged in the event that the Court does not apply California law on a nationwide basis.

50.   Electronic Arts has violated Arizona Revised Stat. Code §§ 44-1401, *et seq.*

51.   Electronic Arts has violated California Bus. & Prof. Code §§ 16700, *et seq.*

52.   Electronic Arts has violated District of Columbia Code Ann. §§ 28-4503, *et seq.*

53.   Electronic Arts has violated Iowa Code §§ 553.1, *et seq.*

54.   Electronic Arts has violated Kansas Stat. Ann. §§ 50-101, *et seq.*

55.   Electronic Arts has violated 10 Maine Rev. Stat. §§ 1101, *et seq.*

56.   Electronic Arts has violated Michigan Comp. Laws. Ann. §§ 445.773, *et seq.*

57.   Electronic Arts has violated Minnesota Stat. §§ 325D.52, *et seq.*

58.   Electronic Arts has violated Mississippi Code Ann. §§ 75-21-1, *et seq.*

59.   Electronic Arts has violated Nebraska Rev. Stat. §§ 59-801, *et seq.*

60.   Electronic Arts has violated Nevada Rev. Stat. Ann. §§ 598A, *et seq.*

61.   Electronic Arts has violated New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

62.   Electronic Arts has violated New York Gen. Bus. Law §§ 340, *et seq.*

63.   Electronic Arts has violated North Carolina Gen. Stat. §§ 75-1, *et seq.*

64.   Electronic Arts has violated North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

65.   Electronic Arts has violated South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

66.   Electronic Arts has violated Tennessee Code Ann. §§ 47-25-101, *et seq.*

67.   Electronic Arts has violated Vermont Stat. Ann. 9 §§ 2453, *et seq.*

68.   Electronic Arts has violated West Virginia Code §§ 47-18-1, *et seq.*

69.   Electronic Arts has violated Wisconsin Stat. §§ 133.01, *et seq.*

70. As a direct and proximate result of Electronic Arts' unlawful conduct, Class members in each of these states have been injured in their businesses and property in that they paid more for interactive football software than they would have paid absent Electronic Arts' unlawful conduct.

### SIXTH CAUSE OF ACTION

### (Violations of State Consumer Protection and Unfair Competition Laws)

71. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

72. Each of the foregoing allegations is incorporated in this claim for relief and is alleged in the event that the Court does not apply California law on a nationwide basis.

73. Electronic Arts has violated Alaska Stat. §§ 45.50.471, *et seq.*

74. Electronic Arts has violated Arkansas Rev. Stat. §§ 4-88-101, *et seq.*

75. Electronic Arts has violated District of Columbia Code §§ 28-3901, *et seq.*

76. Electronic Arts has violated Florida Stat. §§ 501.201, *et seq.*

77. Electronic Arts has violated Idaho Code §§ 48-601, *et seq.*

78. Electronic Arts has violated Kansas Stat. §§ 50-623, *et seq.*

79. Electronic Arts has violated Louisiana Rev. Stat. §§ 51:1401, *et seq.*

80. Electronic Arts has violated 5 Maine Rev. Stat §§ 205-A, *et seq.*

81. Electronic Arts has violated Mass. Gen. Laws ch 93A §§ 1, *et seq.*

82. Electronic Arts has violated Nebraska Rev. Stat. §§ 59-1601, *et seq.*

83. Electronic Arts has violated Nevada Rev. Stat. §§ 598.0903, *et seq*

84. Electronic Arts has violated New Hampshire Rev. Stat. §§ 358-A:1. *et seq.*

85. Electronic Arts has violated New Mexico Stat. §§ 57-12-1, *et seq.*

86. Electronic Arts has violated New York Gen. Bus Law §§ 349, *et seq.*

87. Electronic Arts has violated North Carolina Gen. Stat. §§ 75-1.1, *et seq.*

88. Electronic Arts has violated Rhode Island Gen. Laws §§ 6-13.1-1, *et seq.*

89. Electronic Arts has violated Utah Code §§ 13-11-1, *et seq.*

90. Electronic Arts has violated 9 Vermont Stat. 2451, *et seq.*

91. Electronic Arts has violated West Virginia Code § 46A-6-101.

92. As a direct and proximate result of Electronic Arts' unlawful conduct, class members in each of those states have been injured in that they paid more for interactive football software than they would have but for the anticompetitive conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A. Certification of the action as a Class Action pursuant to the California Code of Civil Procedure Rules of Court, and appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

B. Restitution and/or Damages to class members for the purchase of the software;

C. Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D. Prejudgment and post-judgment interest on such monetary relief;

E. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendant as a result of the anticompetitive conduct alleged in herein;

F. Other appropriate injunctive relief;

G. The costs of bringing this suit, including reasonable attorneys' fees;

H. A declaration that the relevant agreements are null and void; and

I. All other relief to which Plaintiffs and members of the Class may be entitled at law or in equity.

DATED: June 5, 2008

HAGENS BERMAN SOBOL SHAPIRO LLP

By *[signature]*
SHANA E. SCARLETT

715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Stuart M. Paynter (226147)
THE PAYNTER LAW FIRM PLLC
1200 G Street N.W., Suite 800
Washington, DC 20005
Telephone: (202) 626-4486

Facsimile:  (866) 734-0622
stuart@smplegal.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

CLASS ACTION COMPLAINT         - 12 -

000700-00 243373 V1