1

2

3

4

Allen McDonald
Tenn. BPR # 016210
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
Tel: (865) 246-0800
Fax: (865) 690-8199

FILED

DEC 1 3 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

*Counsel for Objector, David C. Marlow*

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AT OAKLAND

| | | |
|---|---|---|
| 9 10 11 12 13 14 15 | GEOFFREY PECOVER and ANDREW OWENS, on behalf of themselves and a class of person similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ELECTRONIC ARTS INC., a Delaware Corporation,<br><br>Defendant. | No. 08-cv-02820 CW<br><br>NOTICE OF INTENT TO APPEAR AND OBJECTION<br><br>Date: February 7, 2013<br>Time: 2:00 p.m.<br>Dept: Courtroom 2, 4th Floor<br>Judge: Hon. Claudia Wilken<br><br>ACTION FILED: June 5, 2008 |

16

17

18

19

20

    **NOW COMES** David C. Marlow (hereinafter, "Marlow"), by and through the undersigned counsel, pursuant to (1) the Notice of Proposed Settlement of Class Action, (2) Rules 23(d) of the Federal Rules of Civil Procedure, and (3) equity, and submit this Notice of Intent to Appear and Objection.

21

## I.  PRELIMINARY STATEMENT

22

23

24

25

    Marlow is a Tennessee consumer who purchased new copies of an Electronic Arts' Madden NFL, NCAA Football, or Arena Football video game for Xbox, Xbox 360, PlayStation 2, PlayStation 3, GameCube, PC, or Wii, with a release date of January 1, 2005 to June 21, 2012 in Knoxville, Tennessee, and is therefore a member of the Settlement Class, as defined and approved

26

27

28

1    by this Court.[1] Marlow respectfully submits that the proposed settlement is unfair and unreasonable

2    and should be denied final approval for numerous reasons, including:

3        (1) The proposed settlement is generally unfair, unreasonable, and inadequate, procedurally

4    and substantively, including most notably the inadequacy of the relief afforded to absent Tennessee

5    Settlement Class members.  The proposed settlement is inequitable because it uses a formula to

6    distribute settlement proceeds which favors absent Settlement Class members in states that do not

7    even permit such indirect purchasers to recover damages over absent Settlement Class members in

8    states, such as Tennessee, that permit indirect purchasers to recover damages.  And so, the

9    Settlement Class fails to meet the commonality and predominance requirements of Rule 23.

10   Moreover, the proposed settlement fails to take into account the consumer-friendly antitrust statute

11   in Tennessee, which permits consumers, even consumers outside Tennessee,  to recover their "full

12   consideration," *i.e.*, the purchase price, as opposed to the mere overcharges permitted by the large

13   majority of states;

14       (2) The proposed Settlement Class also fails to meet the requirements of Rule 23(a)(4), which

15   provides that a court may certify a class only if "the representative parties will fairly and adequately

16   protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  For instance, by proposing a class that

17   consists of individuals who have no viable damage claims under state or federal law, the class

18   representatives have diluted the recovery for Tennesseans and others who actually have viable

19   claims;

20       (3) The proposed certification and settlement also violates the Rules Enabling Act and basic

21   principles of federalism since approving certification and settlement of a class of nationwide indirect

22   purchasers endorses the enlargement of substantive rights of citizens of states which do not permit

23   indirect purchaser standing;

24

25   _____

26       [1]Marlow resides at 8236 Kingstree Lane, Knoxville, TN  37919.  His telephone number is
     (865) 531-2390.  Marlow purchased Electronic Arts' Madden games from 2005-2011.  His son

27   recently traded the 2005 game for the 2012 game.

28                                                           -2-

1   (4) Class Counsel seek exorbitant attorneys' fees ($7,290,000) and expenses ($2,000,000),

2   totaling $9,290,000, or 34.4% of the settlement amount[2];

3   (5) The scope of the release as set forth in the settlement agreement is also unfair to absent

4   Settlement Class members.  As noted above, the notice fails to sufficiently describe exactly what

5   claims were brought and what claims are being released by the proposed settlement.

6   (6) Under Rule 23(c)(1)(B), the certification order must define the class and class claims,

7   issues or defenses. Here, the order granting preliminary approval of the proposed settlement did not

8   contain any definition of the claims, issues and defenses, nor did it define the contours of class

9   certification, in contravention of Rule 23(c)(1)(B). *See Wachtel v. Guardian Life Ins. Co. of Am.*,

10   453 F.3d 179, 186 (3d Cir. 2006).

11   For the foregoing reasons, analyzed in more detail below, final approval of the proposed

12   settlement should be denied.

13   ## II.  STANDARD OF REVIEW

14   **A.    Standard for Approving Class Action Settlements in General**

15   Not only does Rule 23(e) require that district courts extend to any objectors an opportunity

16   to voice their objections before the settlement is approved, *Cotton v. Hinton*, 559 F.2d 1326, 1331

17   (5th Cir. 1977), but the district court must then "examine the settlement in light of objections raised

18   and set forth on the record a reasoned response to the objections including findings of fact and

19   conclusions of law necessary to support the response." *Id.* (emphasis added) (citing *Mandujano v.*

20   *Basic Vegetable Products, Inc.*, 541 F.2d 832, at 835-36 (9th Cir. 1976)).

21   A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed.

22   R. Civ. p. 23(e)(1)©.  Absent class members have little at stake and thus insufficient incentive to

23   closely monitor class counsel and his strategic choices. *See, Mars Steel Corp. v. Continental Ill.*

24   *Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987).  Accordingly, the role of the District

25

26   [2]After deductions for fees, expenses, incentive awards and administrative costs (totaling

27   $10,227,012.03 or 37.9% of the settlement fund), the net settlement amount, to be provided to
Settlement Class members, is $16,772,987.97, or 62.1% of the settlement fund.

28

1   Courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of

2   fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002).  District Courts

3   must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions."

4   *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting

5   *Reynolds*, at 279).

6        While Rule 23(e) provides no specific guidance on how courts assess the fairness of class

7   action settlements, the case law has provided several factors that should be considered, including:

8   (a) the nature of the claims and possible defenses; (b) whether the proposed settlement was fairly and

9   honestly negotiated; © whether serious questions of law and fact exist, placing the outcome of the

10  litigation in doubt; (d) whether the value of an immediate recovery outweighs the mere possibility

11  of future relief after protracted and expensive litigation; (e) whether the parties believe that the

12  settlement is fair and reasonable; (f) the defendant's financial viability; (g) the number and objective

13  merit of any objections received from class members; (h) the risks in establishing damages; (I) the

14  complexity, length, and expense of continued litigation; and (j) the stage of the proceedings.

15  Klonoff, Robert H., *Class Actions and Other Multi-Party Litigation*, p. 192-3 (West 1999).[3]  *See*

16  *also, City v. Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Girsh v. Jepson*, 521 F.2d

17  153, 157 (3d Cir. 1975).

18      **B.      The Settlement in This Case Demands Stricter Scrutiny**

19        Courts have demonstrated an appropriately higher level of scrutiny of certain class action

20  settlements.  In particular, Courts should be leery of settlements using lower compensation to certain

21  class members, *see In Re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,

22  55 F. 3d 768, 808 (3d Cir. 1995) ("One sign that a settlement may not be fair is that some segments

23  of the class are treated differently from others.").  Here, as Marlow demonstrates, the claims of

24  _____

25      [3]Objectors can gain access to information necessary to challenge a proposed settlement by
    asking the court to allow them to take discovery.  In some circumstances, such discovery may
26  even include depositions of counsel involved in settlement negotiations.  Klonoff, Robert H.,
27  *Class Actions and Other Multi-Party Litigation*, p. 194 (West 1999).

28                                                    -4-

1   certain Settlement Class members are diluted by the inclusion of other Settlement Class members

2   who possess no valid legal claims.  Accordingly, the Court should strictly scrutinize the proposed

3   settlement.

4       **C.**     **The Importance of Objectors in Class Action Settlements**

5           Obviously the parties will present the proposed settlement to both the Class and the Court

6   in the most favorable light, downplaying any possible weaknesses or problems with the deal.  In the

7   absence of an adversarial proceeding, the Court is poorly situated to uncover any potential conflicts

8   between Class Counsel and the Class, or among various Class members, or to otherwise assess the

9   fairness of the proposed settlement.  Hence, the significance of hearing the contentions of objectors.[4]

10          It is also generally the duty of the court as well as counsel for the parties present in the action

11  to allow objectors to testify and state their objections on the record.  *Waters v. City of Chicago*, 420

12  N.E.2d 599 (Ill. App. 1981).  After all, it has been said that objectors are the *only* parties with an

13  incentive to uncover flaws in the proposed settlement.  Wasserman, R., *Dueling Class Actions*, 80

14  B. U. L. Rev. 461, 483 (April 2000).

---

23      [4]There are three main kinds of objectors to class settlements – (1) those who genuinely

24  want to improve or scuttle an inadequate settlement, (2) those attorneys in competing class
    actions who simply want a piece of the fee pie, without any really significant improvements in

25  the settlement for class members, and (3) those competing class counsel who have filed class
    actions elsewhere but who have been 'low-balled' out of their own cases by defendant picking

26  the group of class counsel who will settle on terms most favorable to defendants. . . ."  19 Class

27  Action Rep. 207 (1996).

28                                  -5-

## III.  STATEMENT OF SPECIFIC OBJECTIONS

Many commentators have argued about the pros and cons of class actions, but there is no doubt that class actions play a significant role in litigation in the United States.[5]  However,

> [t]hat the use of the device of a class action is subject to abuse in a number of ways is a well known fact. . . .[I]t is the responsibility of the court to guard the integrity of the class action device as well as its own integrity. . . . The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation of plaintiffs' counsel."

*Anthony v. Superior Court*, 59 Cal. App.3d 760, 130 Cal. Rptr. 758, 766 (Cal. App. 1976).

Class actions are "unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (5th Cir. 1979) (Fay, J., specially concurring).  In virtually every class action seeking money damages, the person with the most at stake financially is the attorney representing the class.  Commentator's recognize that the attorney's interest in securing the highest fee and the class members' interest in attaining the greatest recovery often diverge.  John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 686-91 (1986).  The class members, with so little at stake in the first place, have insufficient incentive to closely monitor class counsel and her strategic choices.  *See, Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987).

Likewise, the defendant is aware that class counsel is under substantial pressure to settle.  Indeed, legal scholars have noted that the pressure on class counsel to collude with the defendant in this manner may be extreme.  *See, e.g.*, Tim Oliver Brandi, *The Strike Suit: A Common Problem of the Derivative Suit and the Shareholder Class Action*, 98 Dick. L. Rev. 355, 391 (1994).  Even if class counsel is able to resist this pressure, the defendant may simply go knocking on the door of another lawyer representing the class to see if she will succumb.

---

[5]*See, e.g.,* John C. Coffee, Jr., *The Corruption of the Class Action: The New Technology of Collusion*, 80 Cornell L. Rev. 851 (1995); Arthur R. Miller, *Comment, Of Frankenstein Monsters and Shining Knights: Myth, Reality, and the "Class Action Problem,"* 92 Harv. L. Rev. 664 (1979).

1
2
3

**A.   The Settlement Class Fails to Meet the Commonality and Predominance Requirements of Rule 23, Resulting In a Proposed Settlement That Is Unfair and Unreasonable Because it Penalizes Consumers Who Reside In Indirect Purchaser States, Including Absent Tennessee Settlement Class Members By Diluting Their Recoveries.**

The settling parties before the Court advocate the untenable position that in certifying and settling a class action, it makes no difference whether the class is defined to include members who lack any claim at all.  The problem with the nationwide class settlement in this case is not that it may include consumers with marginal or dubious claims, but that it includes consumers who have *no legitimate legal claim at all*.  That fact is abundantly clear in view of the statutory and decisional law of several states whose laws are purportedly invoked by Plaintiffs as the basis for this class action.  Those state laws, including Tennessee's law, are insurmountable obstacles to any proper certification of a nationwide indirect purchaser class, as the Court has approved here.  Such treatment of state law endorses the chimeric creation of substantive rights where none before existed.

To be sure, the Settlement Class includes, by definition, indirect purchasers asserting California or federal antitrust claims.  The named Plaintiffs and absent Settlement Class members in this action are "indirect purchasers" in the context of antitrust law.  Under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977), such purchasers are prohibited from bringing damage claims under the Sherman Antitrust Act, and must therefore maintain their claims, if at all, under the antitrust or consumer protection laws of their respective states.  Here, the District Court appears to have concluded that California law could be applied to every Settlement Class member, even by consumers who have no legitimate legal claims under their own state's laws.

The significance of the foregoing is that this is a national settlement, and since only about half of American jurisdictions (Tennessee included) grant such consumers standing to maintain such actions, it would be inherently inequitable for absent Settlement Class members in states which do not even permit indirect purchasers standing to maintain *antitrust* actions to recover damages under the same distribution formula as Settlement Class members in states which do permit standing to indirect purchasers.

-7-

1    Many states do not permit indirect purchaser claims for either antitrust or consumer

2  protection violations, absolutely barring tens of millions of consumers from any state law remedy.

3  Yet, the most egregious ingredient of the proposed settlement is that it makes no effort whatsoever

4  to separate or distinguish these indirect claims and claimants by state or by the available state-law

5  remedy. To that end, consumers in Texas, Connecticut, Kentucky, Maryland, or Oklahoma, among

6  others, who plainly have no right to recover damages in their own states, are grouped with claimants

7  from states like Tennessee and Kansas, which not only permit such recoveries, but permit recovery

8  for the full amount of the purchase, not merely the amount of the overcharge.

9    Accordingly, Marlow challenges the commonality of the Settlement Class, as putative class

10  members who do not even have an arguable claim under their state's applicable law do not qualify

11  for inclusion in a class action for failure to satisfy Rule 23(a)(2)'s commonality requirement. Here,

12  common questions of law or fact do not predominate because there simply are no questions of law

13  or fact common to the entire class of indirect purchasers. Moreover, this defect necessarily means

14  that common questions also do not predominate.

15    For all of this, the Court need only look to the definition of commonality provided by the

16  Supreme Court in its recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 180 L. Ed.

17  2d 374 (2011). The Court clarified the meaning of "commonality," saying that the concept is "easy

18  to misread." *Id.* at 2551. The Supreme Court said:

19         [A]ny competently crafted class complaint literally raises common
           'questions,' For example: Do all of us plaintiffs indeed work for Wal-
20         Mart? Do our managers have discretion over pay? Is that an unlawful
           employment practice? What remedies should we get? Reciting those
21         questions is not sufficient to obtain class certification.

22  *Id.* (internal quotation marks and citations omitted). The Court explained that "[w]hat matters to

23  class certification . . . is not the raising of common 'questions' – even in droves – but, rather the

24  capacity of a classwide proceeding to generate answers apt to drive the resolution of the litigation.'"

25  *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof* 84 N.Y.U. L.

26  Rev. 97, 132 (2009)). So, common questions must have answers that "will resolve an issue that is

27

28                                                 -8-

1   central to the validity of each one of the claims in one stroke." *Id.* Accordingly, as defined by

2   *Dukes*, "common questions" are those that, because they have answers that will affect the validity

3   of all class members' claims, can be said to be legally relevant. In conjunction with that definition,

4   for there to be any common questions, all class members must have at least some colorable legal

5   claim. If not, it makes no sense to speak of "resolv[ing] an issue that is central to the validity of each

6   one of the claims . . . ." *Id.*[6]

7          What's more, this inequity makes the proposed settlement rife with conflicts between class

8   members, as is further illustrated by decisions from Oklahoma, Texas, Connecticut, Maryland,

9   Kentucky, Colorado, and Washington. First, in *Major v. Microsoft Corp.*, 60 P.3d 511, 517-18 (Ok.

10  2002), the Oklahoma court affirmed the dismissal of claims under Oklahoma's Antitrust and

11  Consumer Protection Acts, holding that *Illinois Brick* barred claims of indirect purchasers. The

12  Oklahoma Supreme Court denied a petition for certiorari on November 19, 2002. Second, class

13  members in Texas were barred by the Texas Supreme Court from using the Texas Deceptive Trade

14  Practice Act as an end-run around antitrust laws. *Abbott Labs v. Segura*, 907 S.W.2d 503, 505-07

15  (Tex. 1995). Third, finding that the plaintiff's injuries were too remote in relation to the defendant's

16  conduct and that the plaintiff lacked standing to assert a CUTPA claim against the defendant,

17  Connecticut's Supreme Court has barred indirect purchasers from recovering damages under the

18  Connecticut Unfair Trade Practices Act. *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1067 (Conn.

19  2002). Fourth, Maryland also bars indirect purchasers from bringing suit under that state's consumer

20  protection laws. "The actionable unfair or deceptive trade practices listed in the [MCPA] do not

21  include monopolistic conduct or other violations of [MATA]." *See, Davidson v. Microsoft Corp.*,

22  143 Md. App. 43, 792 A.2d 336 (Md. App. 2002). Fifth, in *Arnold v. Microsoft Corp.*, 2001 Ky.

23  App. LEXIS 1311, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001), the Kentucky Court of Appeals

24  held that *Illinois Brick* bars suits by indirect purchasers of Microsoft operating software licenses

25

26          [6]A colorable claim is one that "appear[s] to be true, valid, or right." BLACK'S LAW
27  DICTIONARY 301(9th ed. 2009).

28                                              -9-

1  under Kentucky's antitrust and Consumer Protection Acts, Ky. Rev. Stat. Ann. §§367.110-.310.

2  *Arnold*, 2001 Ky. App. LEXIS 1311, [WL] at *7.   On November 13, 2002, the Supreme Court of

3  Kentucky denied discretionary review of the *Arnold* decision.   Finally, the appellate courts in

4  Colorado and Washington have similarly barred indirect purchasers from a remedy under the

5  consumer protection acts of those states.  *See, Pomerantz v. Microsoft Corp.*, 50 P.3d 929 (Colo.

6  App. 2002); *Blewett v. Abbott Labs.*, 86 Wn. App. 782, 938 P.2d 842, 846-47 (Wash. Ct. App.

7  1997).

8       Even more startling is the fact that the foreclosure of remedies by these few states is merely

9  the beginning, as consumer protection laws of ten (10) states require a showing of scienter:

10  Arkansas: Ark. Code Ann. §4-88-107(a)(1), Colorado: Colo. Rev. Stat. §6-1-105(1), Indiana: Ind.

11  Code §24-5-0.5.3(a), Kansas: Kan. Stat. Ann. §50-626(b), Nevada: Nev. Rev. Stat. §598.410,

12  Oklahoma: Okla. Stat. tit. 15, §753, Oregon: Ore. Rev. Stat. §646.608(1), South Dakota: S.D.

13  Codified Laws Ann. §37.26-6, Utah: Utah Code Ann. §13-11-4, Wyoming: Wyo. Stat. §40-12-

14  105(a).  Four (4) states require a showing of individual reliance: Arizona: *Peery v. Hansen*, 585 P.2d

15  574, 577 (Ariz. App. 1978), Georgia: *Delta Chevrolet v. Wells*, 371 S.E.2d 250 (Ga. App. 1988),

16  Indiana: Ind. Code §24-5-0.5-4, Wyoming: Wyo. Stat. §40-12-108(a), prohibiting class-wide

17  recovery.  The consumer protection statutes of eight (8) states contain pre-filing notice requirements:

18  Alabama: Ala. Code §8-19-10(e)(15 days), California: Cal. Civil Code §1792© (30 days), Georgia:

19  Ga. Code Ann. §10-1-399(b) (30 days), Maine: Me. Rev. Stat. tit. 5 §213.1-A (30 days),

20  Massachusetts: Mass. Gen. Laws ch. 93A §9(3)(30 days), Texas: Tex. Bus. & Com. Code §17.505

21  (60 days), Indiana: Ind. Stat. Ann. §24-5-0.5-5(a) (varies), Wyoming: Wyo. Stat. §40-12-109, which

22  the record appears to indicate were not satisfied in this litigation, and six (6) states prohibit class

23  actions altogether under their consumer protection acts: Alabama: Ala. Code §8-19-10(f), Georgia:

24  Ga. Code Ann. §10-1-399, Louisiana: La. Rev. Stat. §51:1409(A), Mississippi: Miss. Code Ann.

1 §75-25-15(3), Montana: Mont. Code Ann. §30-13-133(1), South Carolina: S.C. Code Ann. 39-5-

2 140©. In the end, about half the states would prohibit any class action of this nature under its

3 consumer protection laws or substantially restrict the ability of consumers to recover.

4     What's worse, the settlement proposed plainly ignores the fact that Tennessee's (and Kansas)

5 antitrust laws permit consumers to recover the "full consideration," *i.e.*, the purchase price. Mindful

6 of this, the proposed settlement appears to pale in comparison to the *actual economic injury* inflicted

7 on Tennesseans. Tenn. Code Ann. § 47-24-106 provides:

8         "[a]ny person who is injured or damaged by such arrangements,
          contract, agreement, trust, or combination described in this part may
9         sue for and recover, in any court of competent jurisdiction, from any
          person operating such trust or combination, the full consideration or
10        sum paid by the person for any goods, wares, merchandise, or articles,
          the sale of which is controlled by such combination or trust."

11    A decision by the District of Kansas demonstrates even stronger the invalidity of the

12 allocation. In *Four B Corp. v. Daicel Chemical Ind., Ltd.*, 2003 U.S. Dist. LEXIS 4703, *6 (D. Kan.

13 Feb. 26, 2003), an indirect purchaser class action which arose out of an alleged international

14 conspiracy to fix the prices of sorbates, defendants challenged whether indirect purchasers had

15 standing to pursue the full consideration remedy under Kan. Stat. Ann. §50-115. The Kansas Act

16 provides for two remedies – the full consideration paid and treble the damages sustained. Kan. Stat.

17 Ann. §50-115 (Supp. 2000). The court held for the plaintiffs:

18        "[A]lthough the highest court in Kansas has not examined the issue
          presented, one lower court has issued an unpublished journal entry
19        opinion that is arguably on point. In Smith v. Philip Morris
          Companies, the District Court of Seward County, Kansas examined
20        whether indirect purchasers were eligible for full consideration
          damages under the Kansas Act. Examining arguments similar to
21        those raised by defendants here, the Smith court found that indirect
          purchasers are eligible to receive full consideration damages under
22        §50-115. The Smith court first recognized that the Kansas legislature
          amended the Kansas Act in 1985 to reflect the State's intent to allow
23        indirect purchaser actions despite the Supreme Court's finding in
          1977 that such actions were disallowed under the federal antitrust
24        statutes. . . . Interpreting the Kansas Act, the Smith court found that
          the Kansas legislature 'recognized its statute of K.S.A. 50-115 as
25        being fully sufficient for an indirect purchaser to sue for the full
          consideration of the product.' Accordingly, the Smith court held that
26        indirect purchasers have "standing" to sue for full consideration of a

27

28                                          -11-

product purchased that is artificially increased in price due to unlawful antitrust activity. . . .

Section 50-115 specifically contemplates full consideration recovery for indirect purchasers when it specifies that "any person injured or damaged ... may sue for and recover ... the full consideration or sum paid by such person for any goods, wares, merchandise and articles included in or advanced or controlled in price by such combination." Kan. Stat. Ann. §50-115. Arguably, under the plain language of the statute, when a product is "advanced ... in price" by an unlawful combination, a person damaged by the unlawful combination may recover the full consideration paid for the product.

. . . . the court finds the plain language of §50-115 allows for the full consideration damages sought by plaintiffs.

*Four B Corp.*, at *14. Undoubtedly, the same analysis must apply to Tennessee.

Consequently, the failure of the settlement to distinguish between the remedies available to consumers when allocating damages is yet another reason to deny final approval to the proposed settlement. Logically, there is no justification for awarding equal damages to consumers whose claims should be limited to the overcharge as opposed to the amount awarded to consumers entitled to the full purchase price.

And so, under the proposed settlement, Marlow's claims, and the claims of every other Tennessean, are diluted by invalid claims of consumers in other states and an inequitable formula of distribution. At bottom, this case presents the Court with a narrow, fundamental, but extremely important issue, the likes of which is being played out in courts all across the country. Can a trial court properly grant approval of a class action settlement which treats the damage claims of indirect purchaser consumers in approximately half the states whose laws permit them a recovery the same as it treats damage claims of consumers in the other half of the states whose laws bar or otherwise substantially restrict their right to a recovery? The parties, who arrived at this furtive settlement, obviously believe so.

-12-

1    In the final analysis, Marlow objects to the settlement allocation based upon the fact that

2  Tennessee permits such claims and that Class Counsel improperly allowed the settlement fund –

3  $27,000,000 – to be substantially diluted by offering to pay out of the settlement fund the claims of

4  consumers who could not possibly recover under either federal or their own state's laws.

5    Accordingly, Marlow respectfully submits there is no just reason to permit consumers whose

6  states do not even permit them to file suit to share equally in this proposed settlement. If the states

7  who do not permit their citizens standing in these type of cases intended for their citizens to recover

8  in such a suit, they would have expressly enacted legislation to permit recovery. However, they have

9  not done so, and neither Class Counsel nor this Court[7] should consciously permit absent Settlement

10 Class members in "indirect purchaser states" to be penalized by compelling them to share equally

11 in the proceeds of this proposed settlement.

12   In conclusion, this proposed settlement sacrifices the remedies of one segment of class

13 members to benefit another. In essence, Class Counsel favored Settlement Class members in half

14 the states over class members in the other half.

15 **B.    The Named Plaintiff Cannot Adequately Represent Tennessee Settlement Class Members.**

16

17   Similarly, the proposed Settlement Class also fails to meet the requirements of Rule 23(a)(4),

18 which provides that a court may certify a class only if "the representative parties will fairly and

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). By proposing a class that

19 consists of individuals who have no viable damage claims under state or federal law, the class

20 representatives have diluted the recovery for those Settlement Class members, like Marlow, who

21 actually have viable claims. What's more, the class representatives also unnecessarily incur the cost

22

23  _____

24   [7]Class Counsel owe a fiduciary duty to absent class members, and the Court is the
    "guardian of the class." These responsibilities to absent class members do not permit class
25  counsel to agree to a formula of distributing proceeds which favors one group of their clients –
    class members – over another. Since absent Settlement Class members in states without indirect
26  purchaser laws could not otherwise recover, to permit such recovery through this proposed
27  settlement would be contrary to Class Counsel's responsibilities.

28                                          -13-

of giving notice under Rule 23 to individuals who have no right to relief, as well as the cost of compensating class counsel for undertaking unnecessary tasks associated with such notice. *In the Matter of Aqua Dots Prods. Liability Litig.*, 654 F.3d 748, 2011 WL 3629723, at *3 (7th Cir. 2011) ("A representative who proposes that high transaction costs (notice and attorneys' fees) be incurred at the class members' expense to obtain a refund that is already on offer is not adequately protecting the class members' interests.")  Those costs necessarily reduce the amount of recovery available to legitimate class members.

### C.   The Proposed Settlement Violates The Rules Enabling Act and Principles of Federalism.

Third, the proposed certification and settlement also violates the Rules Enabling Act and basic principles of federalism.  The Rules Enabling Act authorizes the creation of "rules of practice and procedure," but states that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(a), (b).  In *Dukes*, the Supreme Court highlighted the  role of the Rules Enabling Act in class certification decisions, holding that, "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,'" the proposed class could not be certified because it would have abridged Wal-Mart's statutory right to litigate certain defenses. 131 S.Ct. at 2561 (quoting 28 U.S.C. § 2072(b)).  Here, approving certification and settlement of a class of nationwide indirect purchasers endorses the enlargement of substantive rights.

Similarly, certifying the indirect purchaser class is contrary to principles of federalism.  The policy decisions of the states are "fundamental aspect[s] of our federal republic and must not be overridden in a quest to clear the queue in court." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002).  For instance, when one of those states says to its citizens "you have no claim," yet those citizens are included in a class with people who do have a claim, by no logical process "consistent with federalism can aggregating the 'haves' and the 'have-nots' imbue those 'have-nots' with the very claim that the state has said is foreclosed  to them." *See generally, Sullivan v. DB Invs., Inc.*, 2011 U.S. App. LEXIS 25185 (3d Cir. N.J. Dec. 20, 2011) (Jordan, J. dissenting).

-14-

**D.      Class Counsel Seek Exorbitant Fees and Expenses.**

Next, Plaintiffs request an award of $7,290,000 in attorneys' fees, $2,000,000 in expenses, $927,012.03 to be paid to the notice and claims administrator, and a $5,000 participation service award each for plaintiffs Geoffrey Pecover and Andrew Owens.  Marlow objects both to the propriety of and the excessiveness of the $7,290,000 attorneys' fee and the $2 million expense request, as well as the insufficiency of notice provided to Class members of the basis for such a fee and expense award.

Here, the fee and expense request – totaling 34.4% of the settlement fund – will leave just $17,710,000, or 65.6% of the settlement fund, while reducing the fund for administrative costs and incentive awards leaves $16,772,987.97, or barely 62% of the settlement fund.

In light of the limited result achieved by Class Counsel for the Settlement Class, the $7,290,000 attorneys' fee request should be denied, and reduced below this Circuit's 25% benchmark, as class counsel is only entitled to an award of attorneys' fees that is reasonable in relation to the result obtained.  *In re Bluetooth Headset Products Liability,*654 F.3d 935, 942 (9th Cir. 2011) citing *Hensley v. Eckerhart*, 461 U.S. 424,436,440 (1983) ["Thus, where the plaintiff has achieved 'only limited success,' counting all hours expended on the litigation – even those reasonably spent – may produce an * excessive amount,' and the Supreme Court has instructed district courts to instead 'award only that amount of fees that is reasonable in relation to the results obtained.'"].

Contrary to Class Counsel's arguments, the parties' agreement on a fee award is not the end of the inquiry, for "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth*, 654 F.3d at 941.  After all, the district court's discretion is not unlimited, and "[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).

E.     The Scope of the Release Is Also Unfair to Absent Settlement Class
       Members.

Next, the scope of the release as set forth in the settlement agreement is also unfair to absent Settlement Class members.[8]  The notice fails to sufficiently describe exactly what claims were brought against the Defendant and what claims are being released by the proposed settlement. Yet, the scope of the release refers to every possible cause of action of every nature and description whatsoever, known or unknown, suspected or unsuspected  which absent class members had, now has or may hereafter have against the Defendant that relate to the marketing, promotion or sale of the video games during the Class Period that were or could have been asserted. This release is over-broad and unreasonably vague.

The broad release "negotiated" by Class Counsel extends well beyond a normal general release by releasing claims which may not yet have even accrued.  More particularly, it provides that absent class members shall release the Defendant from any past, present, or *hereafter* claims relative to the video games, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in the complaint.  This broad, sweeping grant of prospective immunity would not be so problematic except for the fact that absent Settlement Class

---

[8]According to the settlement agreement,

"'Released Claims' means any and all actions, causes of action, claims, demands, liabilities, obligations, damage claims, restitution claims, injunction claims, declaratory relief claims, fees (including attorneys' fees), costs, sanctions, proceedings and/or rights of any nature and description whatsoever, whether legal or equitable, including, without limitation, violations of any state or federal statutes and laws, rules or regulations, or principles of common law, whether known or unknown, suspected or unsuspected, had, possessed, owned or held, in law, equity, arbitration or otherwise, that were or could have been asserted by the Named Plaintiffs and/or the Settlement Class against Releasees based on, arising out of, or related to the allegations in the Lawsuit, including but not limited to any allegations that customers were overcharged for interactive football video games because of EA's exclusive agreements with trademark licenses with the National Football League and its Players' Association, the Arena Football League, the Collegiate Licensing Company, the National Collegiate Athletic Association, and/or ESPN."

-16-

1    members would be bound by the judgment and unable to challenge or get judicial relief for totally

2    underlined illegal or unlawful conduct of the Defendant which might have commenced during the

3    class period. Moreover, the proposed settlement does not appear to enjoin or otherwise prohibit the

4    Defendant from engaging in the challenged conduct in the future. Judicial approval of the broad and

5    sweeping release language in the proposed settlement would also seem to constitute violations of the

6    "due process of law clause" of the Fourteenth Amendment of the United States Constitution, the

7    "Law of the Land Clause" of the Tennessee Constitution, Art. I, §8, and the "Open Courts Clause"

8    of the Tennessee Constitution, Art. I, §17, by depriving absent class members of their right to seek

9    a judicial remedy.

10       **F.     The Certification Order Failed to Sufficiently Define the Class and Class
                  Claims, Issues or Defenses.**

11

12       Finally, under Rule 23(c)(1)(B), the certification order must define the class and class claims,

13   issues or defenses. Here, the order granting preliminary approval of the proposed settlement did not

14   contain any definition of the claims, issues and defenses, nor did it define the contours of class

15   certification, in contravention of Rule 23(c)(1)(B). *See Wachtel v. Guardian Life Ins. Co. of Am.*,

16   453 F.3d 179, 186 (3d Cir. 2006).

17       **G.     The Settlement Amount and Allocation Is Inadequate**

18       Marlow purchased Madden games for as much as $59.99, however, he is only entitled to

19   receive a maximum $1.95 as a result of the settlement. The settlement amount seems inadequate in

20   light of the more than 70% price increase asserted by Plaintiffs in their Complaints. And while the

21   notice states that Electronic Arts will not enter into certain exclusive trademark licenses for five

22   years from the date of approval of the settlement, no such restriction exists for continued exclusive

23   licensing agreements with the NFL and NFLPU. Accordingly, no injunctive relief is afforded by the

24   proposed settlement with respect to the professional football interactive software market and

25   competitive pricing of Madden NFL, Electronic Arts' prime revenue generator.

26       In short, the proposed settlement does not reduce the price of Electronic Arts' Madden NFL,

27   nor does it promote competition.

28                                              -17-

## NOTICE OF APPEARANCE AND REQUEST TO BE HEARD
## AT FAIRNESS HEARING

**NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Marlow in the above-styled action. Counsel for Marlow requests that he be allowed to be heard via telephone at the Fairness Hearing currently scheduled for February 7, 2013 at 2:00 pm.[9]

### ADOPTION OF OTHER OBJECTIONS

Marlow hereby adopts and incorporates by reference herein all other proper objections submitted by other objectors in this matter.

### CONCLUSION

**WHEREFORE**, Marlow requests that this Court:

1.     Reject the proposed settlement; and

2.     Award such other and further relief as is just and necessary in this matter.

---

[9]Counsel for Marlow is certainly willing to facilitate any conference call necessitated by his appearance via telephone on behalf of Marlow at the Fairness Hearing. Counsel will be glad to provide call-in information for the Court and any other parties who wish to be heard via telephone if the Court chooses to permit participation via telephone.

Respectfully submitted, this 10th day of December, 2012.

Allen McDonald
Tenn. BPR # 016210
249 N. Peters Rd., Suite 101
Knoxville, TN 37923
Tel: (865) 246-0800
Fax: (865) 690-8199

*Counsel for Objector, David C. Marlow*

Objector:

David C. Marlow
8236 Kingstree Lane
Knoxville, TN 37919
Tel: (865) 531-2390

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

A copy of the foregoing was served upon the following by United States Mail, first class postage prepaid, upon:

Clerk, United States District Court
United States District Court
Northern District of California
1301 Clay Street
Oakland, CA 94612

Shana E. Scarlett
Hagens Berman Sobol Shapiro LLP
715 Hearst Ave., Suite 202
Berkeley, CA 94710

*Settlement Class Counsel*

This 10th day of December, 2012.

W. Allen McDonald

-20-