Theodore H. Frank (SBN 196332)
Melissa A. Holyoak (MO Bar No. 62602, *pro hac vice*)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW, No. 236
Washington, DC 20036
Voice: (703) 203-3848
tedfrank@gmail.com
melissaholyoak@gmail.com

Kyle F. Graham (SBN 218560)
1009 Portola Road
Portola Valley, CA 94028
kylefgraham@hotmail.com
(650) 530-2330

*Attorneys for Objector Theodore H. Frank*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GEOFFREY PECOVER and ANDREW OWENS, on Behalf of Themselves and All Others Similarly Situated, | Case No. C 08-02820 CW |
| Plaintiffs, | **THEODORE H. FRANK'S RESPONSE TO PLAINTIFFS' PROPOSED MODIFIED DISTRIBUTION OF SETTLEMENT FUND AND DEFENDANT'S RESPONSE TO PROPOSED MODIFIED DISTRIBUTION** |
| v. | |
| ELECTRONIC ARTS INC., a Delaware Corporation, | Hon. Claudia Wilken |
| Defendant, | |
| THEODORE H. FRANK, | **CLASS ACTION** |
| Objector. | |

**INTRODUCTION**

In response to the Court's concerns expressed at the final fairness hearing on February 7, 2013[1], plaintiffs present two options for a revised plan of distribution. *See* Pls. Proposed Modified Distribution ("Pls. Proposal"), Dkt. 446 at 3. Whichever option is selected, however, plaintiffs' submission shows that the final distribution will be awarded to ***less than one percent*** of the total class. *See* Def. Response, Dkt. 447 at 2. While the parties previously believed to have 3.7 million postal addresses, it is now revealed that defendant only possesses physical addresses for 141,188 class members. *See* Pls. Proposal at 3. After attorneys' fees and administrative costs, if option one is selected, there would be $7.9 million left over for the *cy pres* recipients.[2] If option two is selected, the *cy pres* recipients would receive $13.7 million,[3] more than four times as much as the class would receive. With up to $13.7 million available and 99% of the class receiving nothing, class counsel should search for additional postal addresses of class members.

Specifically, the settling parties should reach out to video game retailers to identify additional class members. Reaching out to retailers to obtain consumer class information is "standard practice." *In*

---

[1] At the hearing, the Court expressed its concerns regarding the distribution and recognized several unanswered questions regarding notice and timing. The Court further requested that the parties submit a proposed schedule. In its Minute Order relating to the hearing, the Court ordered plaintiffs and defendant to file "their response within two weeks" (February 21) and that Mr. Frank could file a "response two days thereafter." *See* Order dated Feb. 7, 2013 ("February 7 Order"), Dkt. 441. Because the Court had requested a schedule from the parties at the hearing, counsel for Mr. Frank had understood the February 7 Order to require a proposed *schedule* on February 21 (or after claims period ended) and that counsel for Mr. Frank would have two days to respond to that *schedule*. On February 21, 2013, plaintiffs and defendant filed a joint notice proposing a schedule and Mr. Frank responded to the proposed schedule on February 22, 2013. *See* Joint Notice, Dkt. 442; Frank's Response, Dkt. 443. In its order dated February 25, 2013, the Court held that Mr. Frank's objections in his February 22 filing were "not well-taken" because the two-day schedule had been set forth in the February 7 Order. *See* Order dated Feb. 25, 2013, Dkt. 444 at 2. Mr. Frank's objections were based on counsel for Frank's misunderstanding that the February 7 Order related to the time period Mr. Frank had to respond to the requested *schedule* (not to any subsequent submissions). Mr. Frank's objections were not intended to undermine the Court's prior ruling.

[2] $7,947,718 = $27,000,000 - $19,052,282 ($9,290,000 attorneys' fees + $10,000 incentive award + $1,084,306.53 + $8,667,976.14).

[3] $13,726,369 = $27,000,000 - $13,273,631 ($9,290,000 attorneys' fees + $10,000 incentive award + $1,084,306.53 + $2,889,325.38)

THEODORE H. FRANK'S RESPONSE TO PLAINTIFFS' PROPOSED MODIFIED DISTRIBUTION OF
SETTLEMENT FUND AND DEFENDANT'S RESPONSE TO PROPOSED MODIFIED DISTRIBUTION

*re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023, 2012 U.S. Dist. LEXIS 143955, at *14 (E.D.N.Y. Oct. 2, 2012). Indeed, a search is well worth any additional cost given the small amount of class members to receive recovery and the $13.7 million available to subsequently-identified class members.

A search for additional class members may also resolve the dispute regarding treble damages. Plaintiffs propose two options: option one would provide treble damages to claimants and class members (for whom they have an address) resulting in a total distribution to the class of $8.6 million; option two would amend the settlement to add a direct distribution to Seventh Generation class members resulting in a total distribution to the class of $2.8 million. *See* Pls. Proposal at 4-5, 7. Plaintiffs and defendant dispute the propriety of distributing treble damages to class members. *See* Pls. Proposal at 6; Def. Response at 5-11. If a search from video game retailers yields addresses of additional class members, there may be a large enough increase of direct distributions that the question of treble damages becomes moot. If a search is not conducted, however, option one should be selected because contrary to defendant's position, *see* Def. Response, Dkt. 447 at 5-11, an award of treble damages is permissible and preferable to a "next best" *cy pres* distribution. This is especially true given that, as discussed in the original declaration of Theodore H. Frank, many class members such as Frank have suffered injury from the alleged anticompetitive conduct that is not being compensated by the claims process, even if treble damages are awarded; there is thus no "windfall" if, after class members are given the opportunity to participate in the modified settlement, there is full *pro rata* distribution of the settlement fund. *See* Frank Decl., Dkt. 404-2, ¶ 6.

To further increase class participation, the claims period should be increased to 60 days after new notice is disseminated.

Finally, the proposed plan of distribution confirms that the requested attorneys' fee award is excessive. The attorneys' fee award ($9.2 million) may be up to **three times** the amount the class will actually receive ($2.8 million). The attorneys' fee request should be decreased accordingly. *See In re Baby Prods. Antitrust Litig.*, 2013 U.S. App. LEXIS 3379, *7-8 (3d Cir. Feb. 19, 2013) ("[C]ourts need to consider the level of direct benefit provided to the class in calculating attorneys' fees.").

**ARGUMENT**

## I.   CLASS COUNSEL SHOULD REACH OUT TO VIDEO GAME RETAILERS OR CONDUCT OTHER SEARCH EFFORTS TO LOCATE POSTAL ADDRESSES OF CLASS MEMBERS.

Regardless of the distribution option selected, the settling parties should seek to locate additional postal addresses of class members. Initially, it was indicated that there were "16,137,256 records with complete email addresses, approximately 3,780,676 of those records also have a complete postal address." Declaration of Daniel Burke re Dissemination of Class Notice, Dkt. 379, ¶ 9(a)(2). Based on defendant's unexplained "technical issues," however, it is now revealed that defendant has physical addresses for only 141,188 class members. *See* Pls. Proposal at 3. Based on plaintiffs' proposed options of distribution, there would be $7.9 to $13.7 million left over for the *cy pres* recipients. *See infra* at 2. Given that less than 1% of the class will receive an award and that there is up to $13.7 million remaining, the parties should conduct an external search to locate addresses of additional class members.

"[C]lass counsel and class fund administrators have a duty to try to find missing class members." *Jones v. National Distillers*, 56 F. Supp. 2d 355, 356 (S.D.N.Y. 1999); *Briggs v. United States*, 2012 U.S. Dist. LEXIS 18278, at *4-5 (N.D. Cal. Feb. 14, 2012) (noting that court's prior order to class administrator to continue its efforts to locate unpaid class members resulted in additional distribution checks totaling $29,866.54). In *Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023, plaintiffs had reached out to "numerous … major retailers [who] agreed to produce [class member] information to plaintiffs." 2012 U.S. Dist. LEXIS 143955, at *17 (E.D.N.Y. Oct. 2, 2012). When non-consenting retailer Safeway, Inc. challenged the subpoena for the class information, the court ordered production of "the contact information for individuals known by Safeway to have purchased the Combination Aspirins in order to provide direct notice to these purchasers of their right to collect under the preliminarily approved settlement." *Id.* at *14-15. The court recognized that "it is rather standard practice for plaintiffs to subpoena third parties, in contexts similar to this one, in order to obtain information for the purpose of providing notice." *Id.* *14 (citing *In re Relafen Antitrust Litig. v. Smithkline Beecham Corp.*, No. 01-CV-12239-WGY, 2004 U.S. Dist. LEXIS 29834 (D. Mass. Nov. 24, 2004) and *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238, 2002 U.S. Dist. LEXIS

23327 (E.D.N.Y. Jun. 21, 2002).

Plaintiffs in *Bayer* later used that consumer information to make direct settlement distributions to those class members who had made purchases. *See* No. 09-md-2023 (E.D.N.Y), Mem. in Support of Motion to Amend Plan of Distribution (Dkt. No. 218-1) at 6 ("Given the low claims rate, and the existence of the Purchase Records [acquired through contacting retailers], it is fair to use those Purchase Records to ensure that payments are made to class members before cy pres."). *Accord Relafen*, 2004 U.S. Dist. LEXIS 29834, at *17 ("The court find[s] that the efforts of Plaintiffs to provide the most efficient administration of the settlement with respect to consumer members of the Class may be enhanced by providing direct payment to individual consumers for co-pays or cash payments they have made for Relafen or nabumetone during the Class period.")

Here, defendant indicates that the 141,188 physical addresses were obtained from class members who had **previously registered with EA** online in connection with their purchases. *See* Def. Response at 5 n.4. Nothing indicates that class counsel has made any external search to locate class member addresses. If the parties were to reach out to retailers, e.g., the large video game retailer GameStop, the parties may be able to obtain addresses for more class members. In fact, depending on the type of consumer information EA currently maintains, the parties may also utilize other sources to identify postal addresses. *See* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 10:14 (4th ed. 2002) (courts may attempt to locate class members "by referring to public records such as driver registrations or Social Security records, by checking telephone directories, by hiring professional locator services, or by other means").

In short, to fulfill their duty of locating class members, class counsel should request class information from large video game retailers. This type of common request is particularly important here because of the $13.7 million in undistributed funds available and the low amount of class members receiving recovery. Indeed, if class counsel fails to fulfill its duty by conducting a reasonable search for class members, any *cy pres* award would be improperly favoring *cy pres* recipients over class members. *Cf. Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (rejecting cy pres as an inadequate substitute for individual damages when "there is no evidence that proof of individual claims would be burdensome or that distribution of damages would be costly"), *overruled on other grounds by Dukes v. Wal-Mart Stores,*

*Inc.*, 603 F.3d 571 (9th Cir. 2010).

## II.   AWARDING TREBLE DAMAGES UNDER OPTION ONE IS PERMISSIBLE AND PREFERABLE TO A CY PRES DISTRIBUTION.

Defendant argues that option one provides an "impermissible" windfall by providing treble damages to class members. *See* Def. Response at 7 Specifically, defendant claims that option two – providing seventh generation members a direct distribution equal to the average seventh-generation claims – is sufficient because it "results in *all claimants and all identifiable settlement class members receiving a cash payment equal to 100-percent of their alleged damages*—and, therefore, being fully compensated—according to Plaintiffs' own damages expert's damage calculations." *See* Def. Response at 7. Defendant's position is based on several false premises.

*First*, not all class members will receive 100-percent of their alleged damages. The subsequent distribution to class members is based on the *average* claim submitted by class members. Claimants receive $6.79 per sixth generation title purchased, up to a maximum of eight units ($54.32) or $1.95 per seventh generation title purchased, up to a maximum of eight units ($15.60). *See* Pls. Proposal at 2. According to plaintiffs' submission, the average sixth generation claim was $25.71 (3.7 units) and the average seventh generation claim was $7.75 (3.9 units). *Id.* at 5. For those class members who purchased *more* than 3 units, a check for the average claim does not compensate them for 100% of their loss.

*Second*, distribution of treble damages is permissible because it is an available remedy specifically sought by plaintiffs in the complaint. *See* Compl., Dkt. 1 at 7, 11. Defendant argues that treble damages would result in an impermissible windfall under *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2007 U.S. Dist. LEXIS 48151, at *29-34 (S.D.N.Y. July 5, 2007). *See* Def. Response at 9. The *Fears* court was readdressing the issue on remand from the Second Circuit. 2007 U.S. Dist. LEXIS 48151, at *28-34. In *Masters v. Wilhelmina Model Agency*, the Second Circuit had instructed the *Fears* district court that it was well within the district court's power to distribute treble damages for the antitrust allegations:

> It does appear, however, that the District Court was not aware of the extent of its discretion, failing to recognize *that it was empowered to allocate funds to the members of the class as treble damages*. The District Court ultimately held that the terms of the Settlement Agreement barred it from even considering such an alternative. …

1

2      While it is true that the Clayton Act does not allow for prejudgment interest in the

3      absence of a finding of bad faith on the part of defendants causing a material delay in the

       adjudication of the dispute, 15 U.S.C. § 15(a), a finding not made here, ***a treble damages***

4      ***award did lie within the ambit of the District Court's discretion and should be***

5      ***considered on remand***. …

6      In exercising its discretion, the District Court should bear in mind that the purpose of Cy

       Pres distribution is to "put[] the unclaimed fund to its next best compensation use, e.g.,

7      for the aggregate, indirect, prospective benefit of the class." … This proposed rule is

       consonant with the observation of our sister circuit that "[f]ederal courts have frequently

8      approved [the Cy Pres] remedy in the settlement of class actions where the proof of

       individual claims would be burdensome or distribution of damages costly." *Six Mexican*

9      *Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).

10     473 F.3d 423 (2d Cir. N.Y. 2007) (emphasis added)[4]; *accord* AMERICAN LAW INSTITUTE, PRINCIPLES OF

11     THE LAW OF AGGREGATE LITIG. § 3.07 cmt b (2010) ("*ALI Principles*") (rejecting position that "cy pres

12     remedy is preferable to further distributions to class members"). The Second Circuit's instruction is

13     equally applicable here. A distribution of treble damages is appropriate and favored over the "next best"

14     *cy pres* distribution.

15          *Third*, as discussed in the declaration of Theodore H. Frank, the claims process does not fully

16     compensate class members who have suffered other damages from the alleged anti-competitive conduct

17     here. *See* Frank Decl., Dkt. 404-2, ¶ 6. There is thus no windfall—even if the parties distribute the entire

18     settlement fund on a *pro rata* basis above and beyond the supposed treble damages.

19

20     ───────────────

21     [4] The district court on remand did not order treble damages (opinion relied on by defendant, *see* Def.
       Response at 9). *See Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2007 U.S. Dist. LEXIS

22     48151, at *29-34 (S.D.N.Y. July 5, 2007). On subsequent appeal the Second Circuit affirmed the district
       court's decision not to order treble damages, but indicated that excluding treble fees based on a lack of a

23     showing of "actual injury" would have been error: "Although the district court on remand noted a
       potential legal obstacle to awarding treble damages under the Clayton Act without a finding of actual

24     injury, it expressly assumed that it could award such damages, and based its decision to make a cy pres
       distribution instead on equitable grounds. That decision was a permissible exercise of the district court's

25     discretion, and was not based upon any error of law." *Fears v. Wilhelmina Model Agency, Inc.*, 315 Fed.
       Appx. 333, 336 (2d Cir. 2009). Whether treble damages are available at settlement here does not require

26     a showing of actual injury as defendant asserts. *See* Def. Response at 9. Treble damages are an available
       remedy specifically sought under the complaint and appropriately distributed under the settlement. *Cf. In*

27     *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 n.8 (9th Cir. 2011) (examining whether relief

28     obtained in settlement matched theory of the complaint).

THEODORE H. FRANK'S RESPONSE TO PLAINTIFFS' PROPOSED MODIFIED DISTRIBUTION OF
SETTLEMENT FUND AND DEFENDANT'S RESPONSE TO PROPOSED MODIFIED DISTRIBUTION

**III.     THE PROPOSED CLAIMS PERIOD SHOULD BE INCREASED TO 60 DAYS.**

The claims period should be extended from the proposed 30 days to 60 days.  Plaintiffs propose the last day of new notice for the class on April 15, 2013 and close of the new claims period on May 15, 2013. Pls. Proposal at 10. The proposed 30 days is insufficient. *See, e.g., Nielson v. Sports Auth*., 2012 U.S. Dist. LEXIS 168226, at *16 (N.D. Cal. Nov. 25, 2012) (holding that 30 days is too short and will "decrease the number of claims submitted").

Optimum notice is indispensable in a claims made settlement. *See, e.g., Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at * 16 (W.D. Mo. Oct. 12, 2012) (ordering "the notice be improved so that a large number of class members will participate in the settlement"); *cf. also Kaufman v. Am. Express Travel Related Servs.*, No. 07-cv-1707, 2012 U.S. Dist. LEXIS 87751 (N.D. Ill. June 25, 2012) (holding notice inadequate where there was a disproportion between the fee and amount claimed).

Providing a sufficient amount of time for claims is important here. The new notice is providing information regarding a material change in the distribution, i.e., class members could receive increased recovery. *See Sylvester v. Cigna Corp*., 369 F. Supp. 2d 34, 43 (D. Me. 2005) (providing new notice to inform class of $11.97 increase in maximum payout to class member); *In re Baby Prods. Antitrust Litig*., 2013 U.S. App. LEXIS 3379, at *44 & n.10 (3d Cir. Feb. 19, 2013)) (noting that supplemental notice is required after material alteration of terms). Class members unwilling to fill out a form for a $3.90 claim may be willing to do so for a $11.70 claim. Because less than 1% of the class will receive recovery, additional time will provide increased class participation. Thus, the claims deadline should be extended 30 more days from May 15, 2013 to June 14, 2013.

**IV.     THE ATTORNEYS' FEE REQUEST SHOULD BE DECREASED BECAUSE IT SIGNIFICANTLY EXCEEDS THE DIRECT BENEFIT TO THE CLASS.**

Plaintiffs' submission highlights the disproportionate fee request sought by class counsel. The Third Circuit's recent decision in *In re Baby Prods. Antitrust Litig*., 2013 U.S. App. LEXIS 3379, at *7 (3d Cir. Feb. 19, 2013) is instructive. The decision arose out of an appeal of a final approval order, an appeal prosecuted by Mr. Frank through the Center for Class Action Fairness on behalf of an absent class member. *Id.* at *2.

THEODORE H. FRANK'S RESPONSE TO PLAINTIFFS' PROPOSED MODIFIED DISTRIBUTION OF
SETTLEMENT FUND AND DEFENDANT'S RESPONSE TO PROPOSED MODIFIED DISTRIBUTION

The Third Circuit squarely held that it was an abuse of discretion to approve the settlement absent full knowledge of the actual amount of compensation that will be distributed directly to the class. *Id.* at \*7-8. When the outcome of the claims process is that fees, expenses, and indirect *cy pres* donations greatly exceed direct class compensation and "counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, [it is] appropriate for the court to decrease the fee award." *Id.* at \*33-34 (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Id.* at \*33. Put simply, "courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees." *Id.* at \*7-8.

Here, the ratios of direct class benefit to class counsel award and direct class benefit to *cy pres* award are as disproportionate as those rejected by the Third Circuit in *Baby Products.* If treble damages are not awarded, the distribution here would provide: $9.2 million in attorneys' fees and expenses, $13.7 million to cy pres, and only $2.8 million to the class. Pls. Proposal at 7. The potential allocation rejected in *Baby Products* included $14 million in fees and expenses to class counsel, $18.5 million to cy pres (less administrative expenses), and only $3 million to the class. *Id.* at \*7. Final approval should be denied until class counsel are no longer "the foremost beneficiaries of the settlement."[5] *Id.* at \*35-36; *accord In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011) (recognizing that impermissible sign of self-dealing was class counsel's request for "disproportionate distribution of the settlement").

### CONCLUSION

To fulfill their duties as class counsel, class counsel should conduct a reasonable search to identify additional postal addresses of class members. If the distributions proceed without a reasonable search, however, option one should be selected providing treble damages to class members. Further, the attorney award should be significantly reduced so that class counsel is not the primary beneficiary of the settlement.

---

[5] Even if treble damages are awarded, the $9.2 million class counsel award would still exceed the $8.6 direct class benefit.

Dated: March 22, 2013                    Respectfully submitted,


                                         */s/ Melissa A. Holyoak*
                                         Theodore H. Frank (SBN 196332)
                                         Melissa A. Holyoak (MO Bar No. 62602, *pro hac vice*)
                                         **CENTER FOR CLASS ACTION FAIRNESS**
                                         1718 M Street NW, No. 236
                                         Washington, DC 20036
                                         tedfrank@gmail.com
                                         melissaholyoak@gmail.com
                                         (703) 203-3848

                                         Kyle F. Graham (SBN 218560)
                                         1009 Portola Road
                                         Portola Valley, CA 94028
                                         kylefgraham@hotmail.com
                                         (650) 530-2330

                                         *Attorneys for Objector Theodore H. Frank*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case. I further certify that I caused the foregoing document to be sent via first class mail to the following at the addresses listed below:

Tim Bresnahan
Department of Economics
Stanford University
579 Serra Mall
Stanford, CA 94305-6072


DATED this 22nd day of March, 2013.          */s/ Melissa A. Holyoak*
                                              Melissa A. Holyoak

THEODORE H. FRANK'S RESPONSE TO PLAINTIFFS' PROPOSED MODIFIED DISTRIBUTION OF
SETTLEMENT FUND AND DEFENDANT'S RESPONSE TO PROPOSED MODIFIED DISTRIBUTION