1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| GEOFFREY PECOVER and ANDREW OWENS, on behalf of themselves and a class of person similarly situated, | ) ) ) | No. 08-cv-02820 CW |
| | ) ) | FINAL JUDGMENT AND ORDER OF |
| Plaintiffs, | ) ) | DISMISSAL WITH PREJUDICE |
| v. | ) ) | |
| ELECTRONIC ARTS INC., a Delaware Corporation, | ) ) ) | ACTION FILED:  June 5, 2008 |
| Defendant. | ) ) ) | |

This matter (referred to herein as the "Action") came before the Court for hearing on February 7, 2013, pursuant to the Plaintiffs' Notice of Motion and Motion for Final Approval of Settlement, on the application of the Parties for approval of the Settlement set forth in the Stipulation and Agreement of Class Action Settlement and Release ("Settlement Agreement").[1] Pursuant to paragraphs 5 and 6 of the Settlement Agreement, the Court issued subsequent orders modifying the Settlement Agreement's Plan of Allocation of the Net Settlement Fund,[2] and supplemental notice was subsequently sent to class members.[3] Due and adequate notice having been given of the Settlement and its modification, and the Court having considered all papers filed and proceedings held herein, including the objections to the proposed Settlement or fee application, and otherwise being fully informed in the Settlement's premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    This Judgment incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings set forth in the Settlement Agreement.

2.    This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all members of the Settlement Class.

3.    Pursuant to Federal Rule of Civil Procedure 23, the Court certifies the proposed Settlement Class for purposes of the Settlement.

4.    The Court appoints Plaintiffs Geoffrey Pecover and Andrew Owens as the Named Plaintiffs for the Settlement Class.

5.    The Court designates Hagens Berman Sobol Shapiro LLP and The Paynter Law Firm PLLC as Class Counsel for the Settlement Class.

---

[1]    July 20, 2012, ECF No. 375.

[2]    Order Regarding Plaintiffs' Proposed Modified Distribution of the Settlement Fund, Apr. 2, 2013, ECF No. 449.

[3]    Order Approving Form of Supplemental Class Notice, Apr. 12, 2013, ECF No. 454; Order Granting Plaintiffs' Administrative Motion Requesting *Nunc Pro Tunc* Approval of Supplemental Notice, Apr. 23, 2013, ECF No. 459.

6.      This Court finds and concludes that the applicable requirements of Federal Rule of Civil Procedure 23 have been satisfied with respect to the Settlement Class and Settlement, and specifically, that: (a) the number of members of the Settlement Class are so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) Named Plaintiffs' claims are typical of the claims of the Settlement Class they seek to represent; (d) Named Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class and will continue to do so; and (e) common questions of law and fact predominate over individual questions with respect to the Settlement Class and Settlement.

7.      The Action is permanently certified as a class action on behalf of the following persons (the "Settlement Class"):

> All persons in the United States who purchased Electronic Arts'
> Madden NFL, NCAA Football, or Arena Football League brand
> interactive football software, excluding software for mobile devices,
> ("Relevant Software"), with a release date of January 1, 2005 to June
> 21, 2012.

Excluded from the Settlement Class are (i) persons purchasing directly from Electronic Arts; (ii) persons purchasing used copies of the Relevant Software, and (iii) Electronic Arts' employees, officers, directors, legal representatives, and wholly- or partly-owned subsidiaries or affiliated companies.

8.      This certification is for settlement purposes only, and shall not constitute, nor be construed as, an admission on the part of the Defendant that this Action, or any other proposed or certified class action, is appropriate for any other purpose, including, without limitation, for trial class treatment.

9.      Except as to any individual claim of those persons who have validly and timely requested exclusion from the Settlement Class, the Action and all claims contained therein, including all of the Released Claims, are dismissed with prejudice and on the merits as to the Named Plaintiffs and the other members of the Settlement Class, and as against each and all of the

1    Released Parties. The Parties are to bear their own costs, except as otherwise provided in the

2    Settlement Agreement.

3         10.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court hereby

4    approves the Settlement set forth in the Settlement Agreement, subject to the Court's modification

5    of the Plan of Allocation described below, and finds that said Settlement is, in all respects, fair,

6    reasonable and adequate to, and is in the best interests of, the Named Plaintiffs, the Settlement

7    Class, and each of the Settlement Class Members. This Court further finds the Settlement set forth

8    in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel

9    representing the interests of the Named Plaintiffs, the Settlement Class Members, and the

10   Defendant.

11        11.    Pursuant to paragraphs 5 and 6 of the Settlement Agreement,[4] which expressly

12   granted the Court the ability to modify the Plan of Allocation, this Court makes the following

13   modifications to the Plan of Allocation (paragraph 14 of the original Settlement Agreement):

14        a.     Each Settlement Class Member who filed a valid Claim Form no

15   later than May 15, 2013 for the purchase of a Sixth Generation Title shall be entitled

16   to a cash payment of $20.37 for each Sixth Generation Title purchased during the

17   Class Period, up to a maximum of eight units ($162.96). Each Settlement Class

18   Member who filed a valid Claim Form no later than May 15, 2013 for the purchase

19   of a Seventh Generation Title shall be entitled to a cash settlement payment of up to

20   $5.85 for each Seventh Generation Title purchased during the Class Period, up to a

21   maximum of eight units ($46.80). These payment amounts reflect compensation that

22   is equal to three times the alleged damages.

23        b.     If the Net Settlement Fund is not exhausted by timely and valid

24   Claims paid pursuant to paragraph 14(a) above, the Parties have identified

25   approximately 141,188 Settlement Class Members (i.e., 48,649 Sixth Generation

26   purchasers and 92,539 Seventh Generation purchasers) for whom they can identify

27

---

28   [4]   Settlement Agreement, ECF No. 375.

names and addresses. Each of the approximately 48,649 identified Sixth Generation purchasers, who did not previously submit a Claim, shall receive an amount that equals the average Claim paid to a Sixth Generation purchaser (considering Sixth Generation purchases alone) – an amount estimated to be $70.26 – without the necessity of a Claim Form. Each of the approximately 92,539 Seventh Generation purchasers who did not previously submit a Claim, shall receive an amount that equals the average Claim paid to a Seventh Generation purchaser (considering Seventh Generation purchases alone) – an amount estimated to be $23.93 – without the necessity of a Claim Form. These payment amounts reflect compensation that is equal to three times the alleged damages.

    c.    If after six months beyond the mailing of checks described in paragraphs 14(a) and 14(b) above, the Net Settlement Fund is not exhausted (including any amount remaining as the result of uncashed checks), the remaining monies in the Net Settlement Fund will escheat to the federal government pursuant to 28 U.S.C. §§ 2041 and 2042.

    12.    The Court finds that the modification of the Plan of Allocation is within the Court's authority, is appropriate to provide as much monetary relief as possible directly to class members, and is well supported by the case law. For example, in *In re: Pharm. Indus. Average Wholesale Price Litig.*, the First Circuit ruled that trebling of damages to class members was not an abuse of discretion.[5]

    13.    The Court further finds that escheatment or reversion to the federal government pursuant to 28 U.S.C. §§ 2041 and 2042 is appropriate, given the federal government's role as the primary enforcer of the antitrust laws.[6] Case law and legal scholarship recognize that permitting

---

[5]   *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 35-36 (1st Cir. 2009) ("The court ultimately insisted that the settlement pay class members treble damages before any money is distributed through cy pres. . . . The court's judgment here was not an abuse of discretion."). *See also* Order Regarding Plaintiffs' Proposed Modified Distribution of the Settlement Fund, ECF No. 449, Apr. 2, 2013.

[6]   Specifically, section 2041 states:

1    funds to escheat or revert to the federal government, pursuant to the provisions of 28 U.S.C.

2    §§ 2041 and 2042, is a permissible method of disposing of unclaimed settlement funds in a class

3    action.[7] The Court also believes that escheatment to the federal government serves the "need for

4    finality," and will avoid consuming excessive administrative costs that would be incurred by

5    further distributions to Settlement Class Members. Here, given that the Plaintiffs have, from the

6    start of the case, alleged federal claims for injunctive relief under the Sherman Act,[8] escheatment to

7    the federal government is appropriate. And again, given that the distribution of unclaimed funds,

8    including the *cy pres* recipient, was a part of the Plan of Allocation which this Court has the ability

9    to modify pursuant to paragraphs 5 and 6 of the Settlement Agreement, this modification is well

10   within the Court's authority.

_____

> All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court. This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

28 U.S.C. § 2041. Section 2042 states, in relevant part:

> In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

28 U.S.C. § 2042.

   [7]   *See Six (6)Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (explaining that most class actions result in some unclaimed funds, and three alternatives to distribute unclaimed funds: "1) cy pres or fluid distribution, 2) escheat to the government, and 3) reversion to defendants"); *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1255 (7th Cir. 1984) (holding escheat pursuant to sections 2041 and 2042 were appropriate after the passage of one year for making appropriate payments to absent or tardy class members and for absorbing appropriate expenses); *Moore v. California*, No. CIV. S-94-153, 2005 U.S. Dist. LEXIS 29092, at *4-*5 (E.D. Cal. Nov. 21, 2005) (allowing escheatment of residual funds to state entities in a class action settlement); Tim A. Thomas, Annotation, *Permissible Methods of Distributing Unclaimed Damages in Federal Class Action*, 107 A.L.R. Fed. 800 (1992).

   [8]   *Pecover v. Electronic Arts Inc.*, 633 F. Supp. 2d 976, 985 (N.D. Cal. 2009) (denying Electronic Arts' motion to dismiss plaintiffs' section 2 claims under the Sherman Act).

14.     Accordingly, the Settlement embodied in the Settlement Agreement and the amended Plan of Allocation outlined above is hereby approved in all respects, and shall be consummated in accordance with its terms and provisions. The Settling Parties are hereby directed to perform the terms of the Settlement Agreement.

15.     Upon the Effective Date, the Named Plaintiffs and each of the Settlement Class Members, except those persons who have validly and timely requested exclusion from the Settlement Class, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties.

16.     Upon the Effective Date, all Settlement Class Members, except those persons who have validly and timely requested exclusion from the Settlement Class, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Parties.

17.     Upon the Effective Date hereof, each of the Released Parties shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged the Named Plaintiffs, each and all of the Settlement Class Members, and Class Counsel from all claims (including unknown claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims.

18.     The distribution of the notice as provided for in the Preliminary Approval Order and the Court's April 12, 2013 and April 23, 2013 Orders approving supplemental class notice constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class Members who could be identified through reasonable effort. Said notice provided the best notice practicable under the circumstances of these proceedings and of the matters set forth therein – including the proposed Settlement set forth in the Settlement Agreement and the Court

ordered modifications thereto – to all persons entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, and any other applicable law.  All Settlement Class Members are bound by the Settlement Agreement and the Final Judgment, even if they did not receive actual notice of the Action or the Settlement.

19.     The Court hereby approves participation awards in the amount of $5,000 to Plaintiff Geoffrey Pecover and $5,000 to Plaintiff Andrew Owens in accordance with Plaintiffs' Motion for Attorneys' Fees, Expenses and Participation Awards, and finds that such awards are fair and reasonable.

20.     The Court hereby approves payment to the Notice and Claims Administrator, Gilardi & Co. LLC, in the amount not to exceed $670,141.61, for a total cost for administration of the settlement of $1,170,141.61.

21.     The Court hereby awards to Class Counsel (a) attorneys' fees in the amount of $7,290,000; and (b) reimbursement of expenses in the amount of $2,000,000. In making this award of attorneys' fees and reimbursement of expenses, in the amounts described in this paragraph, the Court has considered and finds as follows:

a.     The Settlement has provided a significant amount of remedial relief to the Settlement Class.

b.     Two separate notices were sent to class members.  On or before October 29, 2012, the Notice and Claims Administrator caused notice to be electronically mailed to 12,998,082 email addresses. Of these, 2,893,344 emailed notices were not delivered or "bounced." On or before October 29, 2012, the Notice and Claims Administrator caused postcard notices to be mailed to 1,077,902 mailing addresses. The breakdown of the Postcard Notice mailing is as follows: (1) there were 606,099 class members whose email notices were not delivered or "bounced," but who had valid mailing addresses; (2) there were 552,302 class members whose email addresses were invalid, but who had and had a valid mailing addresses; and (3) there were 175 class members who had valid mailing addresses but no email addresses. In addition, there were 80,674 records that were

removed from the notice mailings because they were duplicate records. On April 15, 2013, the Notice and Claims Administrator caused supplemental email notification to 9,670,982 class members pursuant to the Order Regarding Plaintiffs' Proposed Modified Distribution of the Settlement Fund.

      c.     Only 89 class members have requested exclusion from the Settlement.

      d.     Class Counsel have conducted the Action and achieved the Settlement with skill, perseverance and diligent advocacy on behalf of the Plaintiffs and the Settlement Class as a whole.

      e.     The Action involves complex factual and legal issues and, in the absence of settlement, would involve further lengthy proceedings and uncertain resolution of such issues.

      f.     Had settlement not been achieved, there would remain a significant risk that the Settlement Class may have recovered less or nothing from Defendant, and that any recovery would have been significantly delayed.

      g.     The amount of attorneys' fees and reimbursable expenses awarded to Class Counsel is fair and reasonable given the number of attorney hours expended to achieve the Settlement on behalf of Plaintiffs and the Settlement Class as a whole, and given the estimated value of the Settlement benefits obtained for the Settlement Class; moreover, the amount awarded is consistent with awards for similar work in similar cases.

      22.     Only nine class members filed timely objections to the terms of the proposed Settlement: Aaron Miller (Docket Nos. 397, 460); Brett Gibbs (Docket Nos. 401, 405); Theodore H. Frank (Docket Nos. 404, 443, 452, 461); David C. Marlow (Docket No. 408); Mario Whitmire (Docket No. 409); Joseph Rugo and Matthew Klesken (Docket No. 410); John Flynn (Docket No. 411); and Keith M. Kodosky (Docket No. 418-4).[9]  Three objectors, Mr. Miller, Mr. Frank and Mr. Kodosky, renewed their objections after the Court modified the Plain of Allocation.  One of these

---

[9] An additional class member, Christopher Garrett Hope, filed a timely objection as well, Docket No. 399, but withdrew it the following day, Docket No. 406.

objectors, Mr. Theodore H. Frank, appeared through his counsel at the February 7, 2013 Fairness Hearing.

a.      The Court has considered the objections of the nine class members, and finds that none of them warrants denial of final approval of the Settlement Agreement, for the reasons set forth by Plaintiffs in their filings on January 3, 2013 and May 20, 2013. See Docket Nos. 421, 446 and 462.  Among other things, the argument that the amount of monetary compensation provided to class members is too low is unavailing; class members will receive three times the amount that Plaintiffs' expert calculated they were overcharged.  To the extent that some objectors argue that the injunctive relief provided by the Settlement Agreement is inadequate, primarily because it does not prohibit Defendant from having an exclusive license agreement with the National Football League (NFL), the claims brought here alleged that the series of exclusive agreements with the most prominent sports associations and leagues in the country interfered with competition and violated the antitrust laws, not that any individual agreement did so standing alone.  By achieving an agreement that prohibits Defendant from entering into a series of exclusive licenses, Plaintiffs have addressed the conduct that was the target of their suit.  Further, the lack of exclusive license agreements with other entities will allow competition to enter the marketplace for football simulation games.

b.      Several of the objections made prior to the Court's modification of the Plan of Allocation are now also moot.  For example, the argument raised by some objectors that funds should not be given to a cy pres recipient until after an automatic distribution was made to Seventh Generation purchasers is no longer relevant because, under the Court's modification, the Seventh Generation purchasers will receive an automatic distribution.[10] In addition, the objections raised to the identity of the cy pres recipient are no longer relevant because the Court has chosen to allow the unclaimed funds to escheat to the government.

---

[10] The Court notes that this automatic distribution was made administratively feasible by the tripling of the value of claims, which was suggested by Plaintiffs in the first instance.

1          c.        Mr. Franks also argues that the Plaintiffs should be required to subpoena

2    video game retailers or conduct other search efforts to locate postal addresses of class

3    members.  As the Court previously stated on April 2, 2013, the requested efforts to locate

4    physical or electronic addresses for class members are unnecessary in light of the direct

5    notice sent to ten million class members and given that such efforts would be expensive,

6    thereby significantly reducing the amount of money available to the class.[11] The response

7    to the supplemental notice has proved this to be correct – approximately 143,775

8    Settlement Class Members have now submitted Claims, more than doubling the original

9    response rate.

10         d.        Mr. Franks argued that the claims period should have been re-opened for

11   sixty, rather than thirty, days.  This Court ordered that the claims period be opened for an

12   additional thirty days from the date of the supplemental notice. This period was agreed to

13   by the Parties, including Defendant. This Court finds that an additional thirty days would

14   not have significantly increased the claims rate.  Information provided by the Parties

15   demonstrates that the largest number of claims came within the first week of the

16   supplemental notice – 69,518 were received during the first week, which exceed the total

17   number of Claims received prior to the supplemental e-mail notice.

18         e.        Several class members objected to Class Counsel's fee request and argue

19   that it should be decreased for various reasons, including that it significantly exceeds the

20   direct benefit to the class and because Class Counsel have not justified the use of a

21   multiplier. Given that Class Counsel achieved a settlement in which Settlement Class

22   Members were able to submit claims that amount to three times their alleged damages, and

23   given the increased response rate by class members, this is not correct.  Moreover, this

24   Court has reviewed Class Counsel's request for attorneys' fees in the amount of

25   $7,290,000, which represents twenty-seven percent of the fund – well within the guidelines

26

27   [11]   Order Regarding Plaintiffs' Proposed Modified Distribution of the Settlement Fund at 2,
     Apr. 2, 2013, ECF No. 449.

28

1   of the Ninth Circuit.[12]  The valuation of the total fund to calculate this percentage

2   reasonably includes the notice and administration costs, which were part of the benefit

3   obtained for the class.  See Staton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003).  In

4   addition, the amount of attorneys' fees used in the numerator to calculate this percentage

5   properly does not include the amount of expenses that will be reimbursed to Class

6   Counsel.  See, e.g., In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 945 (9th Cir.

7   2011) (including the fees in the denominator, but not the numerator, when calculating the

8   percentage of the constructive common fund that the attorneys' fees constituted); Schaffer

9   v. Cont'l Cas. Co., 362 Fed. Appx. 627, 632 (2010) (same).  Further, even if the objectors'

10  calculation methods were used, the Court finds that the result here is reasonable.  This is

11  further supported by the fact that, in November 2012 – six months ago – this amount

12  represented a modest 1.15 multiplier on Class Counsel's lodestar.  Over the past six

13  months, Class Counsel have continued to devote time and resources to this case to

14  represent the interests of the class conscientiously, and will continue to do so until the

15  Effective Date of the Settlement and through the distribution of awards to Settlement Class

16  Members.  Moreover, Class Counsel invested a significant amount of resources in

17  diligently prosecuting this strongly contested case for several years before a settlement was

18  reached and a modest multiplier is appropriate in recognition of the contingent nature of

19  the case, as well as of the complexity of this class action case.  This Court finds the

20  attorneys' fees request to be fair and reasonable.

21

22  [12]  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th Cir. 2003) (affirming fee award of 33 percent of settlement fund); *Singer v. Beckton Dickinson & Co.*, No. 08- CV-821, 2010 U.S. Dist. LEXIS 53416, at *20-*24 (S.D. Cal. June 1, 2010) (fee award of 33.3 percent of settlement fund); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg and Sales Practices Litig.*, No. 5:09-md-02015, 2011 U.S. Dist. LEXIS 55351, at *24 (N.D. Cal. May 17, 2011) (fee award of one-third of settlement fund); *In re Nuvelo, Inc. Secs. Litig.*, No. C 07-04056, 2011 U.S. Dist. LEXIS 72260, at *10 (N.D. Cal. July 6, 2011) (fee award of 30 percent of settlement fund); *Thieriot v. Celtic Ins. Co.*, No. C 10-04462, 2011 U.S. Dist. LEXIS 44852, at *15 (N.D. Cal. Apr. 21, 2011) (fee award of 33 percent of settlement fund); *see also Glass v. UBS Fin. Servs. Inc.*, 331 Fed. Appx. 452 (9th Cir. 2009) (noting that district court's calculation of 25 percent of total award rather than 25 percent of amount actually collected by the class was proper and in line with Ninth Circuit precedent).

23.     Neither the Settlement Agreement, nor any action taken pursuant to the Settlement Agreement or to implement its terms shall in any event be: (1) construed as, offered or admitted in evidence as, received as and/or deemed to be, evidence for any purpose in any proceeding, other than in such  proceedings that may be necessary to consummate or enforce the terms of the Settlement, except that the Released Parties may file the Final Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction; or (2) disclosed or referred to for any purpose or offered or received in evidence, in any further proceeding in the Action, or any other civil, criminal or administrative action or proceeding against Defendant or any of the Released Parties.

24.     Neither the Settlement Agreement, nor the Settlement contained therein, nor any action taken pursuant to the Settlement Agreement or to implement its terms, is or may be construed as, or may be used as, an admission by or against the Named Plaintiffs that any of their claims in the Action are or were without merit.

25.     The Court finds that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

26.     The Court reserves jurisdiction over this Action, including all further proceedings concerning the administration, consummation, and enforcement of the Settlement Agreement.

27.     In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, or in the event that the Effective Date does not occur, this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

28.     There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(a) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED:     5/30/2013

THE HONORABLE CLAUDIA WILKEN
UNITED STATES DISTRICT COURT JUDGE