Theodore H. Frank (SBN 196332)
Melissa A. Holyoak (MO Bar No. 62602, *pro hac vice*)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW, No. 236
Washington, DC 20036
Voice: (703) 203-3848
tedfrank@gmail.com
melissaholyoak@gmail.com

Kyle F. Graham (SBN 218560)
1009 Portola Road
Portola Valley, CA 94028
kylefgraham@hotmail.com
(650) 530-2330

*Attorneys for Objector Theodore H. Frank*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GEOFFREY PECOVER and ANDREW OWENS, on Behalf of Themselves and All Others Similarly Situated, | Case No. C 08-02820 CW |
| Plaintiffs, | **DECLARATION OF MELISSA A. HOLYOAK IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES** |
| v. | Hon. Claudia Wilken |
| ELECTRONIC ARTS INC., a Delaware Corporation, | Date:       August 1, 2013<br>Time:       2:00 p.m.<br>Courtroom: 2, 4th Floor |
| Defendant, | **CLASS ACTION** |
| THEODORE H. FRANK, | |
| Objector. | |

Melissa A. Holyoak declares as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.      I am the attorney for objector Theodore H. Frank in this matter.

3.      I am an attorney with the Center for Class Action Fairness, a public interest law firm based out of Washington D.C. I have worked with the Center since July 2012.

4.      I am paid on a salary basis that does not vary with the result in any case. I do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions on public interest law firms.

5.      The goal of the Center is to protect class members in the class action and derivative settlement process from the abuse of the class action and shareholder derivative system. The Center's work in this and other cases, which have won class members millions of dollars, has received national acclaim. *See, e.g.,* Victor Li, "Frank Takes Aim at Bayer Aspirin Settlement, Hagens Berman Fees," The Litigation Daily (Feb. 6, 2013); Ashby Jones, "A Litigator Fights Class-Action Suits," Wall St. J. (Oct. 31, 2011); Allison Frankel, Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal, American Lawyer Lit. Daily (November 30, 2010).

6.      The Center has been successful, winning, for example, reversal on 6 of 8 federal appeals decided to date and all three in the Ninth Circuit. *In re HP Inkjet Printer Litigation*, No. 11-16097, Dkt. 50-1 (9th Cir. May 15, 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012);   *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

### The Frank Objection Created a Material Pecuniary Benefit for Class Members

7.      Frank's objection revealed the imbalance of the proposed settlement where the projected median payout in claims totaled just $1.8 million (6% of the $27 million settlement fund), leaving $14.9 million of which the distributions to class members and *cy pres* was unclear because the claims process was not complete. *See* Frank Objection, Dkt. 404 at 8. Frank further argued that *cy pres* recipients were

DECLARATION OF MELISSA A. HOLYOAK IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES

being unfairly favored over Seventh Generation members who were excluded from the automatic distribution. *See id.*

8.     At the fairness hearing, the Court agreed that the plan of distribution should be amended to provide distributions to Seventh Generation members and additional recovery to class members, and requested the settling parties to propose a revised plan of distribution. The Court approved Class Counsel's resubmitted plan which provided treble damages to all class members and included Seventh Generation members in the automatic distribution. (Dkt. 449 at 1).

9.     The revised distribution results in payout to claimants of $8,081,675.13, Sixth Generation automatic distributions of $3,418,078.74 and Seventh Generation automatic distributions of $2,214,458.27, for total class recovery of $13,714,212. *See* Plaintiffs' Report on Claims, Dkt. 462 at 3.

10.     While the amount of automatic distributions was uncertain at the time of hearing, it is now clear that under the original proposed settlement, the total class recovery would have been $2,172,148. *See* Revised Plan of Distribution, Dkt 446 at 4. This would have left $14.6 million to *cy pres*.

11.     At the time of the fairness hearing, the settling parties were requesting approval of a settlement that would have provided approximately $2.2 million to class members and $14.6 million to *cy pres* recipients. Because Frank revealed the imbalance in the proposed settlement—including the exclusion of the Seventh Generation members—the class recovery improved from $2.2 million to $13,714,212, an improvement of over $11.5 million (or 84% of the total class benefit). There is no doubt that the class would not have received the $11.5 million improvement in recovery in the absence of Frank's objection.

**Objector Frank Has Consistently Acted in the Class's Best Interest**

12.     Frank is foregoing any incentive payment that he may be entitled to under law.

13.     Frank is foregoing any recoupment of costs/expenses that he may be entitled to under law.

14.     Frank personally devoted numerous hours to this case consulting with me on strategy, reviewing filings, and editing briefs and declarations, but, because he is the objector, the Center is not seeking fees for his lodestar. Other courts have found his lodestar to be $750/hour, and he has passed up multiple opportunities to consult at that rate. If the Center were trying to maximize its fee award, rather than trying to maximize the recovery for the class, we would have represented one of the several class

DECLARATION OF MELISSA A. HOLYOAK IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES

members that had contacted the Center regarding the proposed settlement to object so that the Center could eventually petition for recovery of his lodestar.

**Objector Attorney Award**

15. Tax law limits the amount that the Center can receive in attorneys' fees to no more than 50% of our expenses.

16. In dozens of the Center's objections, a court rejected a settlement, reduced attorneys' fees, or the settlement was otherwise improved. The Center has sought fees in only seven of those cases to date, and has been awarded a total of $288,477 since 2009, including an $86,000 award that has not yet been paid because other objectors have appealed the settlement approval. Needless to say, we are not trying to operate a three-attorney public-interest law firm that litigates across the country on an average of $72,000 a year.

17. The Center regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, the Center did not make a fee request and instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *34 (W.D. Wash. Jun. 15, 2012).

**Objector Attorney Award Based on Percentage of the Benefit**

18. Applying a 20% mid-level fee award, the Center would be entitled to an attorney award of fees of $2.3 million.

19. Instead, the Center requests an award of $33,975—just 0.3% of the benefit conferred.

**Lodestar Cross-check**

20. Local Rule 54-5(b) requires a brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

21. I was the primary attorney on this case, with primary responsibility on all aspects of the case.

22. In terms of counsel's skill and experience, I graduated Order of the Coif from the University of Utah S.J. Quinney College of Law in May 2003. In the fall of 2003, I began working as an

DECLARATION OF MELISSA A. HOLYOAK IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES

associate in the Washington, D.C. office of O'Melveny & Myers LLP. While at O'Melveny, I managed complex commercial and financial services litigation, argued before the Fifth Circuit Court of Appeals and other federal and state courts, deposed witnesses, and authored various motions and briefs in state and federal trial and appellate courts. When I left O'Melveny in May 2008, my billing rate exceeded the $450 rate I am seeking in this case.

23.     From 2008 until the present, I have been engaged as a consultant by professional services firms relating to strategic planning, as well as financial services related projects.

24.     In addition, from December 2010 through April 2012, I worked as a contract attorney for Gunster, Yoakley & Stewart, P.A., in West Palm Beach, Florida on complex financial services litigation matters. I was engaged to analyze contracts, develop defenses and draft responses relating to secondary mortgage market investor repurchase demands for large financial services clients involving origination, servicing and fraud allegations. I also assisted in federal litigation involving allegations of fraudulent practices relating to foreclosure proceedings.

25.     In July 2012, I joined the Center for Class Action Fairness. I have authored numerous district court and appellate briefs, reviewed and analyzed numerous settlements, reviewed and edited objections and other briefs, conducted legal research, and appeared in federal court in multiple cases on behalf of the Center.

26.     It is my understanding and belief that the $450 billing rate I am seeking for lodestar in this case is less than the billing rate for attorneys with comparable skill and experience in Washington, D.C.

27.     Plaintiffs in this case have billed their only listed associates at $400 and $450/hr. *See* Declaration of Shana E. Scarlett in Support of Fee Application (Dkt. 390) at 11-12.

28.     $450/hr is also likely below what defense counsel bills for its associates.

29.     Local Rule 54-5(b) requires a statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained.

30.     I am the sole attorney for which we are submitting a lodestar.

31.     In terms of efficiency, I litigated this case with 75.5 hours of attorney time in its lodestar. I view this as a reasonable expenditure of time for researching and producing an objection, preparing for

DECLARATION OF MELISSA A. HOLYOAK IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES

and attending the fairness hearing, and responding to the revised plans of notice and distribution. The parties do not reveal how much time they have expended since February but I would presume that it is substantially more than 75 hours.

32.     I maintained detailed and contemporaneous time records of the work performed on this case that I am happy to provide to the court *in camera*.

33.     My lodestar does not include any time spent on this fee application.

34.     My lodestar does not include material time spent by Ted Frank, Adam Schulman and Kyle Graham.

35.     My lodestar does not include time I spent traveling to and from California for the fairness hearing.

36.     My total lodestar is $33,975 (75.5 hours x $450/hour).

37.     Pursuant to Local Rule 54-5(b), I have met and conferred with class counsel regarding the fee petition. Class counsel does not oppose Frank's request for an order of $33,975 to be paid out of class counsel's fee award. In connection with those discussions, class counsel inquired as to our intention regarding appeal of the final judgment and class counsel's fee award. I indicated that the Center did not intend to appeal the final judgment and class counsel's fee award, but that such decision was independent of any agreement regarding Frank's attorney fee request. The Center has decided not to appeal the final judgment and class counsel award because Frank's objection caused a successful result of $11.5 million additional recovery for class members. Our decision not to appeal is also based on our limited resources and availability. Our only concession to class counsel was to limit our fee request to $34,000.

### Other Factors Supporting Fee Award

38.     The risk of nonpayment was high: because the Center does not and cannot agree to *quid pro quo* settlements to withdraw appeals or objections in exchange for cash payment, the Center could only receive payment if there is a court award after an amended settlement is negotiated that increases class benefit. While the Center ultimately prevails in the majority of its objections, it is less than 25% of the time that there ends up being improved pecuniary benefit to the class, as opposed to good precedent that will benefit future class members in future class actions and class action settlements. And even when we win a material improvement in a settlement, the Center does not seek attorneys' fees unless our role

1  in the improvement is unambiguous and quantifiable, lest we generate an opinion criticizing us for our
2  fee request.

3      I declare under penalty of perjury under the laws of the United States of America that the
4  foregoing is true and correct.

5
6  Executed on June 13, 2013, in Columbia, Missouri.

7
8                                          /s/Melissa A. Holyoak_____

DECLARATION OF MELISSA A. HOLYOAK IN SUPPORT OF UNOPPOSED MOTION FOR
ATTORNEYS' FEES