1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SAMUEL MICHAEL KELLER, et al., on behalf of themselves and all others similarly situated, | Case No. 4:09-cv-1967 CW |
| Plaintiffs, | |
| v. | **FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |
| ELECTRONIC ARTS, INC.; NATIONAL COLLEGIATE ATHLETICS ASSOCIATION; COLLEGIATE LICENSING COMPANY, | Judge: Hon. Claudia Wilken<br>Courtroom: 2, 4th Floor<br>Complaint Filed: May 5, 2009 |
| Defendants. | |

1    This matter (the "Lawsuits") came before the Court for hearing on July 16, 2015, pursuant

2    to Plaintiffs' Notice of Motion and Motion for Final Approval of Class Action Settlement, Dkt. No.

3    1224, filed by *Keller* Named Plaintiffs Samuel Michael Keller, Bryan Cummings, LaMarr Watkins,

4    and Bryon Bishop, individually and as representatives of the Settlement Class defined in Paragraph

5    3 below, filed on July 2, 2015, on the application of the settling Parties for approval of the

6    Settlement set forth in the Amended Class Action Settlement Agreement and Release (including

7    Exhibits) ("Settlement Agreement" or "Settlement").[1]

8    Due and adequate notice of the Settlement having been given to the Settlement Class; the

9    Court having carefully considered all papers filed and proceedings held herein, including the

10   objections to the proposed Settlement and/or fee petitions, the Memorandum of Points and

11   Authorities in Support of the Motion and the associated Declarations, the Settlement Agreement,

12   the arguments of counsel, and the record in this case; the Court otherwise being fully informed in

13   the premises; and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED,

14   AND DECREED that:

15   1.    The Court grants the Motion for Final Approval of Class Action Settlement and

16   grants final approval to the Settlement. The Settlement Agreement is hereby incorporated into this

17   District Court Final Approval Order ("Order and Final Judgment"), and all terms used herein shall

18   have the same meanings set forth in the Settlement Agreement.

19   2.    This Court has personal jurisdiction over all Settlement Class Members and subject

20   matter jurisdiction to approve the Settlement Agreement.

21   3.    The Court confirms its previous certification of the following Settlement Class, for

22   settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3):

23

24   [1] Dkt. No. 1158-2. This Court also has before it a motion for final approval of a proposed class
     action settlement in *NCAA Player Likeness Litigation*, No. 4:09-cv-1967-CW (Dkt. No. 1158-1),
25   between Electronic Arts Inc. ("EA"), Collegiate Licensing Company LLC ("CLC"), and various
     named plaintiffs (the "EA Settlement"). The two proposed class action settlements both concern
26   the alleged use of NCAA men's football and basketball players' names, images, and likenesses in
     certain NCAA-Branded Videogames manufactured and distributed by EA. The parties have
27   coordinated the notice and claims administration of both settlements, as well as the various class
     settlement deadlines. Because the two settlements are separate, however, the Court will issue
28   separate orders in each settlement, and has evaluated each proposed settlement on its own terms.

> All NCAA Division I football and men's basketball players (1) listed on a roster published or issued by a school whose team was included in an NCAA-Branded Videogame originally published or distributed from May 4, 2003 through September 3, 2014 and (2) whose assigned jersey number appears on a virtual player in the software, or whose photograph was otherwise included in the software.
>
> Excluded from the Settlement Class are EA, CLC, the NCAA, and their officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees and immediate family members; and the judicial officers and associated court staff assigned to the Lawsuits and their immediate family members.

The NCAA and the Released Parties shall retain all rights to assert that the Lawsuits may not be certified as a class action except for settlement purposes.

4.      The Court confirms its previous appointment of Plaintiffs Samuel Michael Keller, Bryan Cummings, LaMarr Watkins, and Bryon Bishop as the class representatives ("Class Representatives" or "*Keller* Named Plaintiffs") for the Settlement Class. The Court finds that these Class Representatives have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

5.      The Court hereby approves Incentive Awards in the amount of $5,000 to Samuel Michael Keller, $5,000 to Bryan Cummings,  $5,000 to LaMarr Watkins, and $5,000 to Bryon Bishop in accordance with Right of Publicity Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards (NCAA Settlement); finds that such awards are fair and reasonable; and orders said awards to be paid pursuant to the Settlement Agreement.

6.      The Court confirms its previous appointment of Hagens Berman Sobol Shapiro LLP and The Paynter Law Firm PLLC as Class Counsel for the Settlement Class. The Court finds that Class Counsel have adequately represented the Settlement Class for purposes of entering into and implementing the Settlement.

7.      The Court hereby awards to Class Counsel (a) attorneys' fees in the amount of $5,800,000 (29% of the Settlement Fund) and (b) reimbursement of expenses in the amount of $224,434.20. In making this award of attorneys' fees and reimbursement of expenses, the Court has considered and finds as follows.

2

1        8.     This Court has discretion to award fees either as a percentage of the common fund

2    established or pursuant to the lodestar method. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir.

3    2000). Under either approach the focus should be on whether the "end result is reasonable."

4    *Id.* The Court finds that under both methods the requested fees are reasonable.

5        9.     The Court finds that the attorneys' fees award is fair and reasonable under the

6    percentage-of-the-recovery method based on the following factors:

7        (a)    The results obtained by counsel in this case.  *See Vizcaino v. Microsoft Corp.*, 142

8               F. Supp. 2d 1299, 1303 (W.D. Wash. 2001), *aff'd*, 290 F.3d 1043 (9th Cir. 2002).

9               The Settlement provides significant relief to Settlement Class Members in the form

10              of a large cash fund from which they can claim damages. Indeed, it appears that the

11              combined fund from the NCAA and EA settlements represents approximately 50-

12              75% of the potential recovery at trial—an exceptional result.

13       (b)    The risks and complex issues involved in this case, which were significant and

14              required a high level of skill and high-quality work to overcome. *See In re*

15              *Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Class Counsel

16              devoted significant time and effort to the prosecution of this case, which presented

17              unique legal issues involving, among other things, choice of law, copyright, First

18              Amendment issues, agency law, and ascertainability of a class in the context of right

19              of publicity claims.

20       (c)    The attorneys' fees requested were entirely contingent upon success and counsel

21              risked time and effort and advanced costs with no guarantee of compensation. *See In*

22              *re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

23              Class Counsel bore a high degree of risk in bringing and pursuing this action,

24              including the considerable risk of non-payment, in particular because the case was

25              the first nationwide class action of its kind and thus untested. In addition, Class

26              Counsel faced the substantial risk of having to pay Defendant's fees pursuant to the

27              fee-shifting provisions of California's publicity rights statute, Cal. Civ. Code

28              § 3344, and California's Anti-SLAPP statute, Cal. Code Civ. P. § 425.16.

3

(d)     The range of awards made in similar cases justifies an award of 29% here, *see In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989).

(e)     The Settlement Class Members have been notified of the requested fees and had an opportunity to inform the Court of any concerns they have with the request.

10.     These factors justify an upward adjustment of the Ninth Circuit's 25% benchmark. As such, the Court finds that the requested fee award comports with the applicable law and is justified by the circumstances of this case.

11.     Alternatively, the Court also finds the fees awarded reasonable using the "lodestar" method. Under this method, the Court first calculates Class Counsel's "lodestar" by multiplying the hours worked by their hourly rate(s). This lodestar may then be adjusted upwards by a multiplier based on the results obtained and the risk borne by Class Counsel. Here, the declarations submitted by Class Counsel indicate that their lodestar is $6,771,390.75, based on a total of 20,061.3 hours expended in the litigation. The Court finds that Class Counsel's hourly rates are consistent with hourly rates charged by firms and attorneys of comparable skill and experience located in this district and nationwide. The Court also finds that the hours devoted to this case were reasonable given the complexity of the legal issues involved, which were addressed in extensive briefing before both at the District Court and Court of Appeals, as well as the extensiveness of both discovery and settlement negotiations. The fees awarded in this settlement and the amount to be awarded from the settlement with EA and CLC will represent an appropriate positive multiplier based on the significant recovery Class Counsel have achieved for Settlement Class Members, as well as the risks faced by Class Counsel, as explained above.

12.     In light of the above, the Court finds the requested fees reasonable and that an award of $5,800,000 for this Settlement is appropriate under both the lodestar and common fund approaches.

13.     The Court also awards reimbursement of reasonable costs and expenses in the amount of $224,443.20. The Court finds that these amounts were reasonably incurred in the ordinary course of prosecuting this case and were necessary given the complex nature and nationwide scope of the case, and that the total costs and expenses granted are allowable under the

4

1    Settlement.[2]

2         14.    The Court confirms its previous appointment of Gilardi & Co. LLC as the Notice

3    and Claims Administrator ("Administrator") and finds that the Administrator has so far fulfilled its

4    duties under the Settlement.

5         15.    The Court orders that, by agreement between Class Counsel and the Administrator,

6    $133,436.27 be paid to the Administrator for past and future unreimbursed expenses relating to

7    notice and administration of the Settlement. This is in addition to the $185,476 already received by

8    the Administrator for the fulfillment of its duties.

9         16.    The Court confirms its previous findings in the Preliminary Approval Order that, for

10   settlement purposes only, the Lawsuits meet all the requirements of Federal Rule of Civil

11   Procedure 23(a) and (b)(3).

12        17.    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court approves

13   the Settlement set forth in the Settlement Agreement, and finds that the Settlement Agreement is, in

14   all respects, fair, reasonable, and adequate, and in the best interests of, the Class Representatives,

15   the Settlement Class, and each of the Settlement Class Members, and is consistent and in

16   compliance with all requirements of due process and federal law. This Court further finds that the

17   Settlement is the result of arm's-length negotiations between experienced counsel representing the

18   interests of the Class Representatives, the Settlement Class Members, and the Settling Defendant.

19   The Court further finds that the Parties have evidenced full compliance with the Court's

20   Preliminary Approval Order and other Orders relating to this Settlement. The Settlement shall be

21   consummated pursuant to the terms of the Settlement Agreement, which the Parties are hereby

22   directed to perform.

23        18.    The Court finds that the Class Notice plan as performed by the Parties—including

24

25        [2] The NCAA agreed not to object to an award of attorneys' fees up to 29% of the Settlement
     Fund, or to an award of expenses and costs up to $500,000, and on that basis does not object to
26   Class Counsel's request for such awards. The NCAA, however, takes no position on the
     reasonableness of Class Counsel's request for fees and costs, or their asserted bases. The NCAA's
27   lack of objection to Class Counsel's filings or to the awards of fees and costs in this Order and
     Final Judgment shall not be deemed to be an admission by the NCAA or the Released Parties of the
28   reasonableness of the requested or awarded fees and costs.

the form, content, and method of dissemination of the Class Notice to Settlement Class Members, as well as the procedures followed for locating current addresses for potential Settlement Class Members for notice purposes—(i) constituted the best practicable notice; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Lawsuits and of their right to object to or exclude themselves from the Settlement; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23 and due process, and any other applicable rules or law.

19.     Fed. R. Civ. P. 23(c)(2)(B) requires that class notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

20.     The Court finds that the notice program, previously approved by the Court in its Preliminary Approval Order, has been implemented and complies with Fed. R. Civ. P. 23(c)(2)(B). The Preliminary Approval Order outlined the form and manner by which the Settlement Class Members would be provided with notice of the Settlement, the Fairness Hearing, and related matters.

21.     The nationwide notice program was extensive and robust. Among other things, it included individual mailed notice to members of the Settlement Class who could be identified through reasonable efforts; a dedicated settlement website; publication of a summary notice in leading sports publications; and the extensive use of Internet advertising to inform Settlement Class Members of the proposed Settlement. In order to create a database for mailed notice, the Administrator received 92,732 addresses of potential Settlement Class members via a website set up for NCAA member institutions, as well as via email. Notice and claims forms were mailed to over 90,000 potential Settlement Class Members. Summary notice was also published in *Sports Illustrated* and *ESPN the Magazine*. Mail and publication notice was supplemented by Internet

1   advertising and promotion through various sources, including Google, Facebook, and Twitter.

2   Proof that mailing, publication, and advertising complied with the Preliminary Approval Order has

3   been filed with the Court. This notice program fully complied with Fed. R. Civ. P. 23 and the

4   requirements of due process. It provided due and adequate notice to the Class; in fact, the "reach

5   rate" of the class notice was almost 95%. Furthermore, the large number of claim requests received

6   as of July 2, 2015—20,241, which is an approximate estimate subject to change and final

7   confirmation—provides further evidence of the sufficiency of notice.

8          22.     The Court has reviewed Exhibit E to the Declaration of Kenneth Jue, Dkt. No.

9   1223-5, and determines that Dkt. No. 1223-5 contains the complete list of all Persons who have

10   submitted timely and untimely requests for exclusion from the Settlement Class. The Court rules

11   that all Persons who requested exclusion shall be excluded from the Settlement Class. Exhibit 1 to

12   this Order and Final Judgment is the complete list of all Persons who are excluded from the

13   Settlement Class, and who therefore shall neither share in nor be bound by this Order and Final

14   Judgment.

15          23.     The Court finds that the Plan of Allocation is fair, reasonable, and adequate. The

16   Plan of Allocation provides monetary recovery in some form, on a pro rata basis based on the

17   number of their Season Roster Appearance Points, to all Settlement Class Members who filed a

18   timely claim. *See In re Oracle Secs. Litig.*, No. 90-0931-VRW, 1994 U.S. Dist. LEXIS 21593, at

19   *3 (N.D. Cal. June 18, 1994). The Court hereby adopts Class Counsel's proposal to extend the

20   current Bar Date (July 2, 2015) such that claims will also be considered timely if they are either

21   (1) submitted online through the Settlement website by 11:59 p.m. Pacific time on July 31, 2015, or

22   (2) postmarked by 11:59 p.m. Pacific time on July 31, 2015. The Court also has reviewed the

23   procedures set forth in the Joint Filing of Claim Dispute Resolution Procedure, including Exhibits

24   A and B thereto (Dkt. No. 1241-3). The Court exercises its discretion to approve these procedures,

25   which make non-substantive changes to the Plan of Allocation with respect to the timing of the

26   claim dispute and payment disbursement processes outlined in Subparagraphs 62(e)-(h) of the

27   Settlement Agreement. The Court also notes that there is no reversion to the NCAA of the

28   Settlement Fund, maximizing the amount of payments to Settlement Class Members, as set forth in

Subparagraphs 62(a)-(i) of the Agreement. Accordingly, with the changes noted above, the Plan of Allocation is approved.

24.     The Court has reviewed the objections of Darrin Duncan, Nathan Harris, and Tate George to this Settlement and overrules them. The Court notes that despite an extensive and robust nationwide class notice program, only three objections have been filed; the response to the proposed Settlement has been overwhelmingly positive. The Court overrules the objections and finds that they are without merit for the reasons set forth in Class Counsel's filings, in open Court, and for the additional reasons set out in this Order and Final Judgment. In brief, the Court rules as follows:

a.   First, the objections regarding the requested Attorneys' Fees and Expenses Award are without merit. The requested fees and expenses are fair and reasonable under both the lodestar method and as a percentage of the common fund, and are awarded as detailed in this Order and Final Judgment. The objection that Class Counsel is seeking a double recovery for fees from both the EA Settlement and this Settlement is incorrect: the requested fees are sought based on Class Counsel's efforts to secure both settlements.

b.   Second, the objection that the claims process was burdensome and that checks should simply have been sent to Settlement Class Members' last-known addresses is likewise without merit. The Court finds that the claims process is reasonable and appropriate given the challenges of locating all Settlement Class Members. The Settlement claims process minimizes waste, fraud, and administrative costs and is typical of class action cases like this one. The claims process, which this Court previously approved, is simple, straightforward, and designed to make submitting a claim as easy as possible—as demonstrated by the high claim rate: approximately 29% as of July 2, 2015. Moreover, simply sending checks (many quite large) to the last-known addresses of Settlement Class Members, without confirmation from the Settlement Class Member, would have been irresponsible.

c.   Third, the Court overrules objections regarding the size and scope of the relief

8

1        provided by the Settlement. The Court finds that the relief provided by the

2        Settlement is fair, reasonable, and adequate to Settlement Class Members.

3    d.   Fourth, the objections regarding the scope of the release are without merit because

4        the objections do not accurately characterize the Released Claims. The Released

5        Claims are appropriately limited to claims relating to the NCAA-Branded

6        Videogames, as set forth in the Agreement.

7    e.   Fifth, the objections to the Class Representatives' Incentive Awards are also

8        without merit, and are awarded as detailed in this Order and Final Judgment. The

9        requested Incentive Awards are fair and reasonable.

10    f.   All other arguments of the objectors are overruled as without merit.

11    25.   The Lawsuits and all individual and class claims contained therein, including all of

12 the Released Claims, are dismissed with prejudice and on the merits as to the Class Representatives

13 and all other Settlement Class Members (other than those listed in Exhibit 1 hereto), and as against

14 each and all of the Released Parties, without fees or costs except as provided in the Settlement

15 Agreement, in this Order and Final Judgment. The Court also approves the striking and dismissal

16 with prejudice of the *Keller* Right of Publicity Claims in the Third Consolidated Amended

17 Complaint in the *O'Bannon* case, as set forth in the Agreement.

18    26.   As of the Effective Date, the Class Representatives and all other Settlement Class

19 Members (other than those listed in Exhibit 1 hereto), and their heirs, estates, trustees, executors,

20 administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and

21 anyone claiming through them or acting or purporting to act for them or on their behalf, regardless

22 of whether they have received actual notice of the Settlement, have conclusively compromised,

23 settled, discharged, and released all Released Claims against the NCAA and the Released Parties,

24 and are bound by the provisions of the Settlement, as further provided by the Agreement, including

25 but not limited to Paragraphs 33-34 and 73-78 of the Agreement.

26    27.   This Order and Final Judgment shall be binding on, and have res judicata and

27 preclusive effect in, all pending and future lawsuits or other proceedings encompassed by the

28 Released Claims maintained by or on behalf of the Class Representatives and all other Settlement

9

Class Members (other than those listed in Exhibit 1 hereto), and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Released Claims, and even if such Settlement Class Member never received actual notice of the Lawsuits or the Settlement.

28.     The Court permanently bars and enjoins the Class Representatives and all other Settlement Class Members (other than those listed in Exhibit 1 hereto) from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims and (ii) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on the Released Claims.

29.     EA, CLC, and any other Party or Person who may assert a claim against any Released Party or Releasee based upon, relating to, or arising out of the Released Claims, the Lawsuits, any EA NCAA-Branded Videogame, or the Settlement are barred, enjoined, and permanently restrained from instituting, commencing, pursuing, prosecuting, or asserting any claim against the Released Parties for contribution, indemnity (with the exception of contractual indemnity claims to the extent that any may exist), or otherwise denominated (including but not limited to any other claim that arises out of, involves, or relates to any potential or actual liability owed to the *Keller* Named Plaintiffs and/or the Settlement Class, and/or for related costs or fees in connection with that asserted liability), as claims, cross-claims, counterclaims, or third-party claims in any court, arbitration, administrative agency, or forum, or in any other manner, including but not limited to a request for offset. All such claims are hereby extinguished, discharged, satisfied, and unenforceable, and nothing in this Paragraph shall be deemed to imply that EA, CLC, or any Party or Person has a right to contribution or indemnity against any of the Released Parties.

30.     The Settlement Agreement and the Settlement provided for therein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to the Agreement and the Settlement provided for therein in such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement, as further set forth in the Agreement.

31.     Without further approval from the Court, the Parties are authorized to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement, including all Exhibits thereto, as (i) shall be consistent in all material respects with this Order and Final Judgment and (ii) do not limit the rights of Settlement Class Members.

32.     The Court orders that the certification of the Settlement Class and final approval of the Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by any appellate court and/or other court of review, or if any of the Parties invokes the right to withdraw from the Settlement as provided in Paragraphs 86-87 of the Settlement Agreement, or if the Settlement does not become Final for any other reason, in which event the Settlement Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class, or otherwise be used by any Person for any purpose whatsoever, in any trial of these Lawsuits or any other action or proceedings, as further provided in the Settlement Agreement.

33.     The Court finds the Settlement is in good faith pursuant to federal law and California Code of Civil Procedure 877.6, including that the amount to be paid in the Settlement is in accord with the Class Representatives' and the Settlement Class Members' potential total recovery and the NCAA's potential liability; that the allocation of the Settlement is fair; that the

11

Settlement is not meant to be the equivalent of liability damages; that the Settlement considers the relevant financial circumstances of the NCAA; and that the Settlement is not the product of and does not evince collusion, fraud, or tortious conduct aimed to injure the interests of defendants other than the NCAA.

34. The Court finds that the CAFA Notices sent by the NCAA complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005.

35. The Escrow Account established by Class Plaintiffs' Co-Lead Counsel is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 4688 and the Treasury Regulations promulgated thereunder.

36. The Court finds, under Fed. R. Civ. P. 54(b), that there is no just reason for delay in entering final judgment, and directs that this Order and Final Judgment shall be final and entered forthwith.

37. Without affecting the finality of this Order and Final Judgment, the Court reserves jurisdiction over the Class Representatives, the Settlement Class, and the NCAA as to all matters concerning the administration, consummation, and enforcement of the Settlement Agreement.

IT IS SO ORDERED.

Dated: August 18, 2015                    _____
                                          Judge Claudia Wilken
                                          Senior District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

**Persons Excluded from Settlement Class**

| Name | City | State |
|------|------|-------|
| Michael K. Taylor | Anniston | AL |
| Michael Bolling | Miami | FL |
| Chaz L. Anderson | Inglewood | CA |
| Thomas P. Nardo | Lancaster | PA |
| David Jeremy Schatz | Birmingham | AL |
| Anthony Khalife | Plains | PA |
| Kristoff Williams | Antioch | CA |